In re HINCKEL BREWING CO.

(District Court, N. D. New York.   July 2, 1903.)

1. BANKRUPTCY—PROVABLE CLAIMS—RENT ACCRUING PRIOR TO INVOLUNTARY
   ADJUDICATION.
      Where a petition in involuntary bankruptcy is filed, and the business
   of the alleged bankrupt is continued by a receiver appointed by the
   court, by its order, and he continues in the occupation of leased premises
   until an adjudication is made, the lessor is entitled to the allowance of
   his claim for rent until that time, as a debt founded upon an express
   contract, within Bankr. Act, § 63, subd. 4, Act July 1, 1898, 30 Stat. 563,
   c. 541 [U. S. Comp. St. 1901, p. 3447].

2. SAME—RIGHT OF TRUSTEE TO RECONSIDERATION OF ALLOWED CLAIM—LACHES.
      Where the claim of a landlord for the rent of premises occupied by the
   bankrupt's receiver down to the date of adjudication was filed against
   the estate, and allowed without objection, and so stood until after the re-
   ceiver had settled his accounts and had been discharged, and no claim
   therefor could be made against him, the trustee is precluded, by reason
   of laches, from thereafter having the allowance reviewed.

In Bankruptcy.   This is an appeal from the order of the referee in
bankruptcy reducing the claim of Isaac Hough against the estate, as
allowed, from the sum of $1,768.64 to the sum of $569.36.

John A. Stephens, for claimant.
John A. Delehanty, for trustees.

RAY, District Judge.   The Hinckel Brewing Company was en-
gaged in the manufacture and sale of beer in the plant owned by said
company at Albany, N. Y., and this was its principal business.   To aid
itself in disposing of its product, it advanced money from time to time
to various saloon keepers, to pay license fees, etc., and, as a part of its
business, and to aid in disposing of its product, on or about the 23d
day of October, 1897, it entered into a contract with Isaac Hough by
which said Hough let and rented to the said brewing company the
premises at the corner of Washington Avenue and Capitol Place, in
the city of Albany, for the term of 10 years at the yearly rent of $1,525,
and also the premises at No. 95 South Pearl street, in the city of
Albany, which lease expired May 1, 1902.   The Hinckel Brewing
Company entered into the possession and occupation of these prem-
ises, and rented same to tenants, for the purpose of having the premi-
ses used as saloons, and for the purpose of selling to said tenants lager
beer, the product of said brewery.   The rent of the first-mentioned
premises was payable monthly in advance, at $127.08 per month, and
the premises last above mentioned were let at the rate of $112.50 per
month, payable in advance.   The tenants were to pay special water
rates.   The rental of said premises was paid in full to January 1, 1902.
On or about the 13th day of February, 1902, a petition in involuntary
bankruptcy was filed against the said Hinckel Brewing Company;
and Edward Murphy, 2d, was appointed receiver of the said company,
and by the order appointing him was authorized and directed to con-
tinue and carry on and conduct the business of said company.   He
duly qualified as such receiver, and entered upon the discharge of his
duty as such, and carried on the business of said Hinckel Brewing

IN RE HINCKEL BREWING CO.

Company and acted as such receiver until about the 24th day of January, 1903. The tenant of the Hinckel Brewing Company in possession of the premises at the corner of Washington avenue and Capitol Place continued in the possession of said premises until the 21st day of October, 1902, and the tenant in possession of the premises at 95 South Pearl street as the lessee of the Hinckel Brewing Company continued in possession thereof until the 1st day of May, 1902, when the lease expired. During all of the time mentioned the receiver of the Hinckel Brewing Company, in conducting and carrying on the business as authorized and directed by the order of the court, sold and delivered the product of its brewery to the lessees of said premises. On or about the 21st day of October, 1902, the said Hinckel Brewing Company was adjudicated a bankrupt. On the 26th day of November, 1902, at a meeting of the creditors of said bankrupt, duly called for the purpose of proving claims, the claim of said Isaac Hough for the rent of the premises first mentioned down to October 21, 1902, and for the rent of the premises last above described to the 1st day of May, 1902, was duly filed and approved, and no objection was made thereto by any person. The meeting of creditors was adjourned from time to time, and on the 24th day of January, 1903, Charles H. Sabin, William S. Dyer, and Charles J. Herrick were duly appointed trustees of the estate of said bankrupt. On the 27th day of January, 1903, Edward Murphy, 2d, as such receiver, rendered and filed an account of his proceedings as such receiver, and on the 26th day of February, 1903, same was allowed, passed, and approved, and the receiver was released and discharged. Such receiver had paid no part of the rent accruing due during the time he acted as such receiver, but, as such receiver, and representing the estate, he gave no notice to Hough of the termination of the lease, or that he should not recognize the relation existing by virtue thereof, and of the subleasing, but, on the other hand, continued to sell and deliver beer to such subtenants, thereby continuing the occupation and use of said premises in the same mode and manner the Hinckel Brewing Company had done, and reaped all the benefits, if any, accruing from that part of the business. On the 4th day of April, 1903, a dividend was declared upon all the claims filed, proved, and allowed against the bankrupt estate, including the claim of said Isaac Hough, which had been allowed. On or about the 6th day of April, 1903, Robert A. Knight, a creditor of the bankrupt, served upon the trustees objections to the payment of said claim of Isaac Hough, and requested the trustees to institute a proceeding to reduce his said claim, and said Knight filed an objection to the payment of said claim with the referee in bankruptcy. Thereupon the trustees instituted the proceeding to reduce this claim, and the referee made an order reducing the claim from $1,768.64 to the sum of $569.36, on the theory that the estate of the bankrupt is only liable to pay to Hough the rent of the premises that had accrued at the time the petition in bankruptcy was filed.

It is undoubtedly true that if, on the filing of a voluntary petition in bankruptcy, the bankrupt abandons leased premises, the lessor may take possession, and is limited in his recovery of rent to the date of the filing of the petition. The lease is terminated by an adjudication

in any event. But where an involuntary petition is filed, and the alleged bankrupt continues the business until adjudication, and continues in the occupation and possession of leased premises until an adjudication is made, there is no reason why the lessor should not recover his rent down to the time of such adjudication. Rent accrues, and the estate has the use of the premises, and the debt is founded upon an express contract to pay the money. Both lessor and lessee recognize the life of the lease. In the case at bar the Hinckel Brewing Company remained in possession and control of the leased premises until the expiration of the lease of a portion of said premises, and of the other premises mentioned until the time the adjudication was made. But more than this, by the express order of the court the receiver was authorized and directed to continue the business of the Hinckel Brewing Company. This meant all the business—both the manufacture and the sale of beer in the mode and manner the Hinckel Brewing Company had been carrying on and conducting that business, and the leasing of these premises, and the occupation thereof, and the sale and delivery of the products of the brewery to the tenants in possession. So long as this receiver continued in possession of these premises as he did, and reaped the benefits of the arrangement mentioned, under the express order and authority of the court, the contract or lease for the use thereof continued in full force and effect; and the claim of Mr. Hough is a debt founded upon an express contract, and the claim is provable, and should be allowed, under subdivision 4 of section 63 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]). It may be that this is not a fixed liability, evidenced by an instrument in writing, absolutely owing at the time of the filing of the petition against the Hinckel Brewing Company, but that is not the only class of debts that may be proved and allowed. "Debts of the bankrupt may be proved and allowed against his estate which are * * * founded upon an open account or upon a contract express or implied." This debt is a debt of the Hinckel Brewing Company, incurred by it, and is founded upon an express contract in writing made between the Hinckel Brewing Company and Isaac Hough, and by which the Hinckel Brewing Company bound itself to pay the rent at the rate mentioned to said Hough. When the court authorized and directed the receiver to continue the business of the Hinckel Brewing Company, it recognized this contract, and the liability of the Hinckel Brewing Company thereon, and continued the contract in force, and continued the liability of the company to pay the rent. The receiver availed himself of the privileges and received the benefits, and the court would now perpetrate a fraud upon the claimant, should it refuse to allow this claim. The claim might, perhaps, have been presented in a different form. A claim might, perhaps, have been made for the rent down to the time the petition was filed and the receiver appointed, and then a claim might have been filed against the receiver for the rent accruing thereafter during the continuance of the receivership and the occupancy of the premises by the tenants of the Hinckel Brewing Company. But the receiver has been discharged, and no disposition was made of this matter at that time, except that the claim had been presented in its present form against

the estate of the bankrupt, and had been allowed. No attempt to review that action was made until after the receiver was discharged, and it was too late to present the claim against him and have it allowed as an expense incurred by him. But this was not an expense incurred by the receiver. He made no contract. He simply recognized the one already made and acted under it pursuant to the authority and direction of the court. To all intents and purposes, the receiver was the company. It is too late now, after the discharge of the receiver, to review the original proof and allowance of the claim presented by Isaac Hough; and this court further holds that, by reason of laches, the trustees are precluded from having a review of the claim. To allow a review and reduction at this time upon the theory claimed is to aid in the perpetration of a fraud upon the claimant, who, relying on the allowance thereof, has changed his position for the worse, and lost rights or remedies he otherwise might have asserted—a claim against the receiver for the rent on the expense-account theory, already referred to. He is certainly entitled to the rent down to the date of adjudication on the one theory or the other.

In Re Mahler (D. C.) 105 Fed. 428, it was held that rent accruing after adjudication could not be allowed, but rent was allowed up to that time. In Re Goldstein, 2 Am. Bankr. R. 603, rent accruing after the filing of the petition was allowed. In Re Jefferson (D. C.) 93 Fed. 948, it was held that the landlord has no provable claim against the tenant's estate in bankruptcy for the rent which would have accrued under the lease after the date of adjudication. In Bray v. Cobb (D. C.) 100 Fed. 270, held, that a lease is terminated by the adjudication in bankruptcy, and that the lessor has no provable debt which can be allowed for rent accruing after the date of such adjudication. In Re Arnstein et al. (D. C.) 101 Fed. 706, the trustee, when appointed, continued to occupy the premises, and paid the landlord for such occupancy. The landlord then resumed possession, and moved for the liquidation of his claim against the estate of the bankrupt for damages for breach of the lease, in order that he might thereafter prove such damages as a claim against the estate. Held, properly, that this could not be done. But that is not this case. Here the receiver appointed by the court, by authority and direction of the court, continued all the business of the alleged bankrupt until the adjudication, and continued to occupy the premises by and through the tenants of the bankrupt for the benefit of the estate; and there is no pretense that any notice was given to Hough that the relations were changed, or would be considered as changed. This court cannot see that the filing of this petition against the Hinckel Brewing Company, and the appointment of a temporary receiver by the court in bankruptcy, with authority and direction to continue the business—which meant all the business—terminated the lease or the liability of the alleged bankrupt to pay rent. When the adjudication was made, the lease terminated, and no rent accruing thereafter can be proved or allowed as a debt against the bankrupt estate; but, especially under the circumstances of this case, rent to the date of adjudication was properly provable and properly allowed as a claim or debt against the estate.

Is there any good reason why rent should not continue until the

adjudication is made in involuntary cases? Shall the landlord, so soon as a petition is filed, enter the premises and dispossess the tenant? He must, or lose his rent, if rent ceases the moment a petition is filed by third persons. Suppose the alleged bankrupt defeats the proceedings; is he exonerated from the payment of rent during their pendency? Must he lose or has he lost the protection and benefits of his lease because some one filed a petition against him? Are the leased premises thrown upon the hands of the lessor because some creditors file a petition against the lessee? Where is the provision of law or the rule of equity that says rent ceases when a petition in bankruptcy is filed against the tenant, or that such act of third persons terminates a lease between the alleged bankrupt and his landlord?

The order and decision of the referee reducing this claim is reversed, and such claim is allowed at the sum at which originally proved and allowed, viz., $1,768.64. So ordered.