In re PITTSBURG LEAD & ZINC CO., CONSOLIDATED.

ROSENBAUM et al. v. DUTTON.

(District Court, W. D. Missouri, C. D.    July 8, 1912.)

No. 295.

1. BANKRUPTCY (§ 342*)—ALLOWANCE OF CLAIM—REMEDY OF STOCKHOLDERS.

Bankruptcy Act July 1, 1898, c. 541, § 57d, 30 Stat. 560 (U. S. Comp. St. 1901, p. 3443), provides for the allowance of claims unless objected to by "parties in interest," and section 57k provides that allowed claims may be reconsidered before the estate has been closed. Nearly six months after the referee had set aside an order expunging an allowed claim, and after a call had been made upon unpaid stock, though before the estate was closed, certain stockholders, who had acquiesced in the allowance of the claim, for the first time objected to it and, instead of seeking review of this last order through the referee, made an original motion before him to expunge the claim. *Held*, that they were not entitled to the relief sought.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 525, 529; Dec. Dig. § 342.*]

2. BANKRUPTCY (§ 342½*)—ALLOWANCE OF CLAIM—REVIEW—BURDEN OF PROOF.

On petition in bankruptcy for a review of the referee's denial of a motion or petition to expunge a claim which the record showed he had allowed, the burden was on the petitioners to show that the claim ought to be expunged.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 530; Dec. Dig. § 342½.*]

3. BANKRUPTCY (§ 342½*)—ALLOWANCE OF CLAIM—REVIEW—SUFFICIENCY OF EVIDENCE.

Evidence *held* insufficient to overcome the presumption in favor of the validity of a claim allowed by a referee in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 530; Dec. Dig. § 342½.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from, and Petition for Review of Order of, the District Court of the United States for the Central Division of the Western District of Missouri.

In the matter of the Pittsburg Lead & Zinc Company, Consolidated, a corporation, bankrupt. Ruling and order was made by the Referee, overruling a motion and petition of H. S. Rosenbaum and another to expunge the claim of F. R. Dutton, and petitioners appeal and petition for review. Sustained.

Botsford, Deatherage & Creason and Sangree & Bohling, for appellants.

R. S. Martin, R. D. Williams, and W. V. Draffen, for respondent.

VAN VALKENBURGH, District Judge. This is an appeal and petition for review of H. S. Rosenbaum and S. A. Will from the orders, findings, and judgment of the referee in the matter of and in connection with the allowance of the claim of F. R. Dutton. According to the statement of the referee:

"The Pittsburg Lead & Zinc Company, Consolidated, was adjudged a bankrupt on the 14th day of September, 1908, upon an involuntary petition filed August 28, 1908. The first meeting of creditors was held on the 13th of October, 1908, at which meeting a claim in favor of F. R. Dutton was proved and allowed in the sum of $7,352.69. Mr. S. A. Will was present at the meeting, and in answer to his inquiry was advised by the referee that he would be given time and that, if he saw proper, he might file a motion to expunge the allowance. On October 18, 1908, claims were proved and allowed in favor of Rosenbaum and Will, respectively. On the 1st day of April, 1909, the trustee filed motions to expunge the allowance so made in favor of Will and Rosenbaum, respectively, and such proceedings were had thereon that on the 26th of April, 1909, the allowances of these claims were expunged. On the same day, April 1, 1909, the trustee filed a motion to expunge the claim allowed in favor of F. R. Dutton. Issues were made upon this motion, evidence heard, and a finding and judgment entered by the referee on the 15th day of July, 1909, sustaining the motion and expunging the allowance in favor of F. R. Dutton. On the 27th of July, 1909, Dutton filed a motion for a rehearing which was granted on the 15th of November, 1909, and the cause set down for hearing on the 17th of December, 1909. On that day by consent of the parties a judgment was entered overruling the motion to expunge and permitting the claim to stand as allowed. On the 5th day of May, 1910, the trustee filed a motion for an assessment and call upon the unpaid stock of the stockholders of the bankrupt corporation to meet its unpaid debts, and notice was given to the stockholders thereof, and among others to Rosenbaum and Will, as such stockholders. On June 13, 1910, Rosenbaum and Will filed the motion now under consideration. This pleading, which is herein termed a 'motion,' is called a 'petition' by the pleader. It is, in effect, a motion to set aside the allowance of the claim and also a motion to expunge the claim, as the pleading embraces both matters, and the evidence is upon both points. The cause was submitted to the court upon both questions at the same time. The trustee also filed a paper in which he stated he unites in the motion to set aside the order allowing the claim of Mr. Dutton and to expunge the same, but expressly refuses to adopt the pleading so far as any improper act was done in the entering of the judgment sought to be set aside."

This motion was overruled by the referee, and Rosenbaum and Will have brought the ruling to this court for review. In this proceeding the trustee refuses to join. The specific grounds upon which the ref-

eree based his rulings are: (1) The petitioners are in no position to raise the question of setting aside the order allowing the claim of Dutton. (2) The trustee cannot present it at this time. (3) The delay has been such as now to preclude the parties from seeking to set aside the judgment.

[1] It must be conceded that the .petitioners are not creditors of the bankrupt estate. They took no exception to the order expunging their claims originally allowed, more than a year has elapsed, and they cannot now prove their claims. They are stockholders of the bankrupt company who may be assessed to pay the debt which they seek to have expunged, and, for that reason, claim to have such an interest as entitles them to move in the matter. The clauses of the Bankrupt Act upon which petitioners base their right are paragraphs "d" and "k" of section 57 thereof. These paragraphs are as follows:

"(d) Claims which have been duly proved shall be allowed, upon receipt by or upon presentation to the court, unless objection to their allowances shall be made by parties in interest, or their consideration be continued for cause by the court upon its own motion."

"(k) Claims which have been allowed may be reconsidered for cause and reallowed or rejected in whole or in part, according to the equities of the case, before but not after the estate has been closed."

In this case the estate had not been closed, but a considerable part of it had been distributed. This phase of the controversy turns upon the meaning of the term "parties in interest," found in paragraph "d" above quoted.

In Chatfield et al. v. O'Dwyer et al., 101 Fed. 797, 42 C. C. A. 30, it was held that the trustee alone could take an appeal from an order of the District Court allowing a claim presented by a creditor against the estate of a bankrupt which was objected to and contested by another creditor; that this could not be done by such objecting creditor, but if the trustee, in such case, refuses to appeal from the allowance of the claim, on the request of the objecting creditor, the latter may move the District Court to direct the trustee to take an appeal as requested, or to permit the creditor to prosecute an appeal in the name of the trustee. The court points out the evil results which would follow if every factious creditor was allowed to litigate individually and in his own name the claims of other creditors, without the sanction or approval of the trustee of the bankrupt court.

In Re Lewensohn, 121 Fed. 538, 57 C. C. A. 600, it was held that a proceeding may not be instituted by a creditor, without the concurrence of the trustee in bankruptcy, to re-examine the allowed claims of other creditors, the statute covering the subject of proof, allowance, and re-examination of claims being silent as to the party who may move for the re-examination; and general order 21 of the Supreme Court, providing that when the trustee or any creditor shall desire the re-examination of any claim he may apply by petition to the referee for an order for the re-examination, and thereupon the referee shall make an order fixing a time for hearing the petition, merely intending to permit a proceeding by a creditor prior to the qualification of a trustee.

In Re Sully et al. (D. C.) 142 Fed. 895, it was held that, after the appointment of a trustee in bankruptcy, he alone is authorized to institute proceedings for the consideration of claims. The court said:

"It would be an intolerable practice to permit any debtor sued by a trustee, by reason of his interest in the result of the suit, to intervene in bankruptcy, file objections to and litigate the claims proved by the creditors, or to take any measures to interfere with the proceedings or to annul the adjudication, in order to defeat the right of the trustee to maintain the action. Such a practice would give rise to interminable delay and expense in the settlement of estates."

In the same case on appeal (152 Fed. 619, 81 C. C. A. 609), the Circuit Court of Appeals upheld the District Court in this particular, but upon petitions for review of other creditors reversed the ruling of the court, denying to such creditors leave to re-examine the claims of other creditors. The court said:

"The term 'parties in interest,' as used in section 57d of the Bankrupt Act, which permits parties in interest to object to the allowance of claims against the estate, applies only to those who have an interest in the res which is to be administered and distributed in the proceeding, and does not include those who are merely debtors or alleged debtors of the bankrupt."

In Re Hatem (D. C.) 161 Fed. 895, an unsecured creditor of a bankrupt was permitted to move to expunge the allowed claim of another creditor; the trustee upon application duly made to him having refused to act. The court holding that:

"This provision for objection to their allowance by parties in interest clearly indicates the purpose of Congress to abrogate the rule as to proceedings in bankruptcy, and provide for objections being made by parties in interest, other creditors."

In all these cases the parties in interest in the fund to be administered and distributed, who were allowed to proceed in this manner, were creditors. Debtors are expressly denied this right. It is true that the indebtedness of these petitioners to the bankrupt estate, if any, arises out of their relationship as stockholders who may be assessed to pay the debts of the bankrupt estate. For this reason, counsel for petitioners urge that they are such parties in interest as to bring them within the list of qualified objectors.

If this be so, a very serious obstruction is presented in the administration of bankruptcy cases involving corporations. When, and under what circumstances, should this procedure be indulged, if at all? It will be remembered that these petitioners presented their claims at approximately the same time that Dutton originally presented his. They knew of the allowance of his claim, and they took no step to oppose it. Approximately six months elapsed, and then the trustee moved to reconsider and expunge all of these claims—those of petitioners as well as Dutton. Petitioners' claims were at once set aside, and that of Dutton was expunged two or three months later. The latter order was, however, set aside upon petition for rehearing, and in December, 1909, some months later, the trustee, considering it inadvisable to proceed further, conceded that the motion to expunge

should be overruled, and the referee so ordered. This was on December 17, 1909. No further step was taken until May 5th following, when the trustee filed a motion for assessment and call upon the unpaid stock of petitioners Rosenbaum and Will. Thereupon, on June 13th, the latter filed the motion or petition now under consideration. Six months had elapsed since the judgment of the referee overruling the motion to expunge.

It will be observed that the trustee had, in fact, acted for estate and creditors in moving a reconsideration of the allowances to Dutton. He had pursued his objection to a point where he deemed it to be no longer for the benefit of the estate to continue his opposition. His position was sanctioned by the referee in the order finally made. The petitioners had been made aware of the allowance of this claim since October 13, 1908. It does not appear that they ever opposed it, or urged the referee to do so, until six months after its final adjudication, and then only when it appeared that this allowance was to be made the basis of calls upon them for assessments upon their unpaid stock. Their present move is not made in the interest of all the creditors, nor of any creditors, and it comes at a time when, because of long inaction, the allowance of this claim may be deemed to have been acquiesced in by them. The bankruptcy law does not contemplate such interruptions in the administration of estates.

Furthermore, as has been said, the trustee has acted in this case, and an adjudication had resulted. Petitioners were evidently not dissatisfied with the action taken until they found that their own pecuniary interests were likely to be involved. Then, instead of seeking a review of the order of December 17, 1909, through the referee, acting either voluntarily upon request or by order of court, if need be, they filed a motion or petition to expunge, thereby seeking unnecessarily a relitigation of the same matter before the referee. This is a procedure that is decidedly to be condemned, and is without apparent warrant in the statute. Even though the petition for review were not taken until so long a time after the ruling of the referee, nevertheless it would have been the recognized form of procedure pointed out in the law, and the lapse of time, under a proper showing, could have been explained to the court as satisfactorily as can the failure of petitioners more seasonably to object to the original allowance of the claim. I am of the opinion that the petitioners have mistaken their remedy, and that the spirit of the Bankrupt Act denies them the relief sought in any aspect of the case.

[2] It is again to be recalled that this is an original motion or petition to expunge, and, upon petition for review of the ruling and order of the referee upon that motion and petition, this court is asked to expunge the Dutton claim. A certificate has been filed, together with a transcript of all the proceedings and evidence before the referee, the claim stands as allowed, and the burden is upon the petitioners to show that it ought to be expunged.

[3] The prayer is based: First, upon the contention that the trustee acted improperly, and that the referee was deceived in making the

final order of December 17th; the second, the prior action of the referee in ordering the claim to be expunged is urged in support of the contention that the final action of the parties was improper and should be set aside. No fraud is disclosed, unless assumed knowledge on the part of the trustee that the claim was invalid is sufficient to support the further inference that he acted fraudulently in withdrawing his opposition. This is not sufficient. It is disclosed in the record that the original order was based upon an agreed statement of facts, which afterwards the parties complained had been misinterpreted by the referee. It was decided to present the matter anew. It does not follow that both trustee and referee may not in good faith have believed that the former conclusion was unjustified.

But the court must base its present ruling, if it take cognizance of the matter at all, upon the entire record before it. At the hearing upon the present motion and petition to expunge, new evidence was adduced in the form of depositions of Will, Rosenbaum, and Dutton, filed July 15, 1910. The referee was impelled to his former ruling by the fact that it appears to have been agreed that Dutton received $20,000 worth of stock in payment of bills for services amounting to $5,000. This indicated that the stock under the law of Maine remained unpaid to the extent of $15,000, and, Dutton being liable in this sum, his indebtedness to the estate exceeded his claim. He was also claimed to owe an additional amount of $1,169, because of deficiency in stock payments; but this was more than covered by an offset allowed by the pleadings amounting to $3,000. Testimony of all parties in these new depositions relating to the account and these stock transactions is somewhat rambling, uncertain, and unsatisfactory; but nevertheless the testimony of Dutton, supported by the minute book of the bankrupt company, tends to prove that this stock was not issued to him in payment of different bills for services in the aggregate sum of $5,000. On the contrary, the resolution recited as follows:

"In consideration of the services heretofore and to be hereinafter rendered by the duly appointed auditor and the fiscal agent F. R. Dutton to this company, the executive officers are directed to issue to F. R. Dutton 10,000 shares of the treasury stock of the company in full consideration of all services as auditor not already paid for, rendered and to be rendered, in full of all services rendered and to be rendered in and about the development of the mine, erecting mill, in payment of debts incurred or that may be incurred, in erection and enlargement of mill, development of grounds, as well as debt secured by trust deed as unpaid purchase money of land, and any and all other services required until said mine shall be fully developed and in good running order, cleaning ore for market.

"Provided, however, that the provisions of this resolution shall in no wise or manner affect or supersede the compensation to him as fiscal agent, as per resolution of the board heretofore adopted, providing a compensation for sale of stock to raise a fund for development purposes and mill erection."

A second issue of 10,000 shares was similarly made. So there is ample evidence from which both referee and court could find that Dutton's stock was not unpaid, and therefore that legal objection to the allowance of his claim is removed. Certain it is that the petitioners have fallen far short of carrying the burden resting upon them

to overcome the presumption in favor of the validity of the claim allowed by prior judicial action.

For all the foregoing reasons, the ruling and order of the referee overruling the motion and petition to expunge the Dutton claim are sustained. An order will be entered accordingly.