[No. B015638. Second Dist., Div. Five. May 28, 1986.]

SAWYER NURSERIES, Plaintiff and Appellant, v.
LAWRENCE J. GALARDI et al., Defendants and Respondents.

## Counsel

Lillick, McHose & Charles, Robert L. Morrison, M. David Minnick, Douglas A. Carter and Mason C. Brown for Plaintiff and Appellant.

Brown & Brown and Howard B. Brown for Defendants and Respondents.

## Opinion

**ROWEN, J.**\*—This is an appeal from a judgment entered after trial, without jury, in an action to foreclose a mechanic's lien upon certain real property. We find that appellant's foreclosure action is barred by Civil Code section 3144[1] and affirm the judgment of the trial court.

The appellant herein, Sawyer Nurseries (hereinafter Sawyer), plaintiff below, is a contractor who provided labor and materials to improve certain real property located in Malibu, California (hereinafter Eagle Pass Property), owned by Lawrence J. Galardi, dba Lawrence J. Galardi, a professional corporation and Shari J. Galardi (hereinafter, jointly, Galardi). The respondents, defendants below, are the beneficiaries of a first (Tokai Bank, hereinafter, Tokai) and second (Cambridge Group, hereinafter, Cambridge) deed of trust. Galardi, the owner of the Eagle Pass Property and the trustor of the first trust deed to Tokai and the second trust deed to Cambridge is not a party to the proceedings herein by reason of his prior bankruptcy.

---

\*Assigned by the Chairperson of the Judicial Council.

[1] Civil Code section 3144 provides: "(a) No lien provided for in this chapter binds any property for a longer period of time than 90 days after the recording of the claim of lien, unless within that time an action to foreclose the lien is commenced in a proper court, except that, if credit is given and notice of the fact and terms of such credit is recorded in the office of the county recorder subsequent to the recording of such claim of lien and prior to the expiration of such 90-day period, then such lien continues in force until 90 days after the expiration of such credit, but in no case longer than one year from the time of completion of the work of improvement."

In the course of Galardi's bankruptcy, Cambridge, the holders of the second deed of trust, sought relief from the United States Bankruptcy Court from the automatic stay imposed during such bankruptcy proceedings on all actions to collect or enforce claims against the bankrupt. Relief was granted with respect to the Eagle Pass Property and shortly thereafter Cambridge foreclosed upon its security and had a trustee's deed recorded. One hundred and sixty-six days after recordation of Cambridge's trustee's deed, Sawyer filed this action to foreclose its mechanic's lien on the Eagle Pass Property.

Times and dates of various events in issue in this matter are of particular importance and, accordingly, are set forth herein as follows:

September 22, 1978—Galardi's first deed of trust to defendant Tokai is recorded.

August 9, 1979—Sawyer commenced its work of improvement on the property owned by Galardi.

February 8, 1980—Galardi's second deed of trust to Cambridge is recorded.

July 19, 1981—Galardi's chapter 11 bankruptcy proceeding is filed.

February 4, 1981—Sawyer, describing itself as a secured creditor, files its request for notice with the United States Bankruptcy Court.

February 20, 1981—Sawyer's mechanic's lien claim in regard to labor, materials and other work provided to Galardi's Eagle Pass Property is prepared and recorded with the Los Angeles County Recorder's Office.

February 20, 1981—Sawyer's secured creditor's claim, which notes its security status by virtue of a mechanic's lien on the subject real property for labor, materials and other work provided, is prepared and filed with the bankruptcy court.

January 14 to November 9, 1982—Sawyer, through its attorney, communicates with the bankruptcy trustee, with Galardi, and with Tokai and Cambridge through their respective counsel, asserting Sawyer's position as a secured creditor and claiming its interest in the Eagle Pass Property by means of "valid and perfected mechanic's liens." No secured creditor objected to Sawyer's claim of its secured status in the bankruptcy proceeding.

June 29, 1982—Sawyer filed its complaint for marshaling of assets and for sale of real property free and clear of liens.

July 9, 1982—Cambridge filed its answer to Sawyer's complaint to marshal assets, etc.

November 9, 1982—The trustee in bankruptcy, through its counsel, enters into a stipulation with Sawyer, through its counsel, agreeing to the validity and amount of Sawyer's mechanic's lien (without taking a position as to its priority).

January 10, 1983—Cambridge files its complaint in bankruptcy court to be relieved from the automatic stay (11 U.S.C. § 362) of the bankruptcy proceedings.

January 17 to May 31, 1983—Communication is had between Sawyer and Cambridge, through their respective counsel, regarding Sawyer's asserted claim. No agreement respecting that claim is had.

June 6, 1983—The bankruptcy court terminates and annuls the automatic stay on the Eagle Pass Property and permits foreclosure by Cambridge. Notice of the order granting Cambridge relief from the automatic stay is sent to and received by Sawyer.

August 31, 1983—Cambridge forecloses on its security deed of trust.

September 1, 1983—Cambridge records a trustee's deed on the Eagle Pass Property.

November 30, 1983—Ninetieth day after Cambridge's recording of the trustee's deed of trust.

February 14, 1984—Sawyer files this lawsuit to foreclose its mechanic's lien (166 days after the recording of the trustee's deed of trust to Cambridge).

April 5, 1984—Cambridge quitclaims its title interest in the Eagle Pass Property to "Eagle Pass Associates."

May 3, 1984—Eagle Pass Associates' quitclaim deed and a security deed of trust and assignment of rents from Eagle Pass Associates as trustor to Tokai Bank, dated April 20, 1984, is recorded with the Los Angeles County Recorder's office.

The United States Bankruptcy Code[2] provides that statutes of limitations running against the bankrupt's creditors are suspended while the bankruptcy proceedings are pending. However, there are certain exceptions from that general principle. One of them is when the automatic stay occasioned by 11 United States Code section 362 is terminated. (2 Collier on Bankruptcy (15th ed.) par. 108.04, pp. 108-8ff.) Section 362 of the Bankruptcy Act automatically stays all proceedings to collect or enforce a claim against a bankrupt as long as the debtor or his property is in bankruptcy.[3]

Appellant properly filed its claim in the bankruptcy proceeding in accordance with section 501 of title 11 of the United States Code.[4] Without objection having been made thereto, appellant's filed claim was prima facie evidence of its validity for all purposes in the bankruptcy proceedings. (11 U.S.C. § 502(a).)[5]; also *Matter of Colorado Corp.* (10th Cir. 1976) 531

---

[2]Subdivision (c) of section 108 of title 11 of the United States Code (Bankruptcy Act) provides: "Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—[¶] (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or [¶] (2) 30 days after notice of termination or expiration of the stay under section 362, 922, or 1301 of this title, as the case may be, with respect to such claim."

[3]Title 11 of United States Code section 362 provides in pertinent part, as follows: "a. Except as provided in subsection (b) of this section, a petition filed under section 301, 302 or 303 of this title, or an application filed under section 5(a)(3) of the Security Investor Protection Act of 1970 (15 U.S.C. 78e(a)(3)), operates as a stay, applicable to all entities, of—[¶] (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; [¶] (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title; [¶] (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; [¶] (4) any act to create, perfect, or enforce any lien against property of the estate; [¶] (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title; [¶] (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title; . . . [¶] (c) Except as provided in subsections (d), (e), and (f) of this section—[¶] (1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate; and . . . [¶] (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—. . ."

[4]Title 11 of the United States Code section 501 provides in pertinent part, as follows: "(a) A creditor or an indenture trustee may file a proof of claim. An equity security holder may file a proof of interest."

[5]Title 11 of the United States Code section 502(a) provides as follows: "(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a partner in a partnership that is a debtor in a case under chapter 7 of this title, objects."

F.2d 463; *In re Morales Vda. de Cruz* (D.C.P.R. 1973) 357 F.Supp. 1118; *In re Sabre Shipping Corporation* (S.D.N.Y. 1969) 299 F.Supp. 97; *Matter of Paul R. Dean Co., Inc.* (D.C.N.Y. 1978) 460 F.Supp. 452.) ▉▉ As a result thereof, appellant contends that its filed claim in the bankruptcy proceeding, while the automatic stay imposed by the Bankruptcy Act was in effect, constituted evidence of its validity, amount and scope and negated appellant's obligation to institute a state court mechanic's lien foreclosure action once the automatic stay had been lifted.

Appellant further argues that the filing of its secured creditor's claim shifted the burden to respondents, as secured creditors claiming an interest in the Eagle Pass Property, to challenge appellant's claim. Sawyer contends that respondents' failure to do so for the lengthy time period involved, in light of the fact that communication and correspondence between the respective parties had provided respondents with due notice and specific opportunities to challenge Sawyer's asserted secured creditor's claim, caused Sawyer to rely upon respondents' silence. Consequently, appellant proceeded to obtain a stipulated agreement, in response to its complaint to marshal assets, from the trustee for the debtor Galardi. Appellant claims that such agreement perfected the validity of its mechanic's lien, leaving only the issue of its priority open for future resolution. Appellant concludes, therefrom, that respondents are properly and justifiably to be charged with laches and have lost their rights to contest, challenge or deny appellant's allowed claim. (*In re Pittsburg Lead & Zinc Consolidated* (D.C.Mo. 1912) 198 Fed. 316; *In re Williams* (D.C.Ga. 1915) 224 Fed. 984; *In re Hinckel Brewing Co.* (D.C.N.Y. 1903) 123 Fed. 942; also *In re Nichols,* (N.D.N.Y. 1909) 166 Fed. 603.)

Finally, appellant claims that when Galardi's trustee in bankruptcy entered into the November 9, 1982, stipulation with Sawyer confirming the validity and amount of the mechanic's lien claim, the trustee's act not only bound the debtor, Galardi, but also respondents. Appellant contends that the trustee had the power to bind the debtor Galardi and all those in privity with him. Sawyer proffers the argument that respondents Tokai and Cambridge were in privity with Galardi by virtue of their respective deeds of trust against the Eagle Pass Property and, therefore, respondents should have been barred by the doctrine of res judicata from attempting to assert defenses and claims against the validity and amount of Sawyer's mechanic's lien claim.

Respondents did not contest the amount or the legitimacy of appellant's claim in the bankruptcy proceedings as against the debtor, Galardi. Respondents concede that appellant is entitled to participate in and obtain distribution from Galardi's estate pursuant to an order of the bankruptcy

court. Respondents argue, however, that the matter before this court concerns itself with real property over which the bankruptcy court had terminated its jurisdiction and had lifted the automatic stay that had theretofore prevented appellant from perfecting its mechanic's lien rights on that real property.

Respondents take the position that the action of the trustee in bankruptcy with respect to the various creditor's claims filed in the bankruptcy case affects such creditor's interests only in regard to their respective rights to participate in and obtain distribution from the debtor's estate pursuant to an order of the bankruptcy court. They argue that the filing of its secured creditor's claim in the bankruptcy court did not relieve appellant from the need to move expeditiously, as required by state law, to protect its rights and interests in property over which the bankruptcy court terminated its jurisdiction. Further, respondents argue that there were no issues of fact presented at trial that was sufficient to estop them from raising the statute of limitations bar of Civil Code section 3144. We agree.

■ The purpose of a bankruptcy proceeding is to allow for the orderly distribution of the debtor-in-bankruptcy's assets. Creditors are permitted to file claims in such bankruptcy proceedings in order to share in the distribution of the debtor's assets. (11 U.S.C. §§ 501, 502.) A properly filed claim is deemed prima facie evidence of its validity and means that the claimant may participate in distribution of the bankrupt's assets, absent disallowance of the claim. (3 Collier on Bankruptcy (15th ed.) par. 50201, pp. 502-9ff; 9A Am.Jur.2d, Bankruptcy (15th ed.) § 595, pp. 268ff.) Appellant acted appropriately to protect its rights in Galardi's bankruptcy proceeding when it filed its claim. The filing of such a claim, however, is a purely ministerial or administrative act and not a judicial act. Judicial consideration of the claim occurs only in respect to its allowance, sua sponte, or upon an objection being filed in accordance with the Bankruptcy Act. (*In re Hart Ski Mfg. Co. Inc.* (Conn.D.C. 1982) 18 B.R. 154, 159.)

Coincidental with the filing of its secured creditor's claim in the bankruptcy proceeding, appellant properly recorded its mechanic's lien on the Galardi property with the Los Angeles County Recorder's office. ■ The necessity of initiating action to foreclose on that mechanic's lien was automatically stayed pursuant to 11 United States Code section 362 by Galardi's filing of its petition for bankruptcy in the United States Bankruptcy Court. (*Robinson* v. *S & S Development* (1967) 256 Cal.App.2d 13, 18 [63 Cal.Rptr. 663].) The tolling of the statute, however, exists only for the time that the real property in issue remains within the jurisdiction of the bankruptcy court and is property of the debtor's estate. (*In re Perry* (D.C.Md. 1983) 29 B.R. 787, at p. 794.)

When, on June 6, 1983, the bankruptcy court terminated and annulled the Galardi bankruptcy case stay to permit foreclosure by Cambridge of its security deed of trust on the Eagle Pass Property and, when, on August 31, 1983, Cambridge foreclosed on said deed of trust and recorded the trustee's deed 400on the following day, September 1, 1983, the property ceased being property of the debtor's estate and the automatic stay provided by 11 United States Code section 362 terminated.

In the *Perry* case, the United States District Court, quoting from the United States House Report No. 95-595, reprinted in 1978 United States Code Congressional and Administrative News at page 6299, stated as follows: "[s]ubsection (c) of Section 362 specifies the duration of the automatic stay. Paragraph (1) terminates a stay of an act against property of the estate when the property ceases to be property of the estate, such as by sale, abandonment, or exemption." The applicable principle is that the automatic stay remains in effect as long as the property in issue remains in the debtor's estate. When the property leaves the dominion of the bankrupt's estate, as in this matter, by sale pursuant to the bankruptcy court's order, and becomes the property of others, it no longer has the protection of the stay provisions.

Once the automatic stay tolling Civil Code section 3144 terminated, appellant was required to act within the 90-day statutory time limitation set forth therein in order to protect its mechanic's lien rights.

Neither of the authorities cited by appellant in support of its "privity/res judicata" argument are applicable here. *Swofford Bros. Dry Goods Co.* v. *Owen* (1913) 37 Okla. 616 [133 P. 193], deals with (1) the doctrine of estoppel and its application in preventing a creditor, because of his past dealings with the entity, from denying the corporate status of a technically deficient corporate entity and (2) the determination that a creditor's election to proceed with a claim in bankruptcy against such technically deficient corporate entity waives any right that may exist to pursue that same claim against a shareholder of the company outside of the bankruptcy proceedings. *In re Merrick* (D.C.Mich. 1873) case No. 9463, 17 Fed. case No. 75 deals with (1) the powers and duties of a register to whom a cause in bankruptcy was referred under the Bankruptcy Act of 1868, (2) the method of establishing proof of a debt owed under that same Bankruptcy Act and, (3) the necessity of a creditor's use of an attorney to present such a claim in bankruptcy.

This court assumes that appellant's counsel neither deliberately nor through gross misconduct intended to direct this court to authorities totally

unrelated to the issues before it as such conduct would be inexcusable upon the part of any lawyer and only places additional burdens on this court.

The term "privity" is an elusive concept, without any precise definition of general applicability. However, it is not necessary for us to explore all of its subtleties here. (*St. Louis Typographical Union No. 8* v. *Herald Company* (E.D.Mo. 1967) 277 F.Supp. 276, 284.)

■ "Privity"[6] as used when applying the doctrine of res judicata in the circumstances in issue here means mutual or successive relationship to precisely the same right of property; as testator and executor, ancestor and heir, assignor and assignee, grantor and grantee, and lessor and lessee. (*United States* v. *Stull* (D.C.Conn. 1952) 105 F.Supp. 568, 571; *Estate of Hanson* (1954) 126 Cal.App.2d 71 [271 P.2d 563]; *Bernhard* v. *Bank of America Nat. Trust & Sav. Ass'n.* (1942) 19 Cal.2d 807 [122 P. 892].)

Respondents' interests in this case, as secured creditor claimants, are adverse to the interests of the bankrupt and not derivative of those interests so as to be in "privity" with the bankrupt and thereby bound by the doctrine of res judicata by the action of the bankruptcy court in allowing or disallowing claims presented by other creditors.

The authority cited by appellant, *United States* v. *Walley* (S.D. Cal. 1958) 160 F.Supp. 67, is factually inapplicable to the matter in issue here. There, the court, in applying the res judicata bar against relitigating the merits of a tax claim that was allowed without contest in the bankruptcy proceeding, held that the bankrupt would not be permitted to challenge the bankruptcy court's holding in a subsequent suit and neither would those parties whose interests are derived from and stand in place of the bankrupt as, in that case, the decedent bankrupt's representative. The court there held that "it is hardly necessary to add that since defendant's decedent [the debtor in bankruptcy] would have been precluded by the doctrine of res judicata from relitigating the merits of the tax claim, the defendant as the decedent's personal representative is similarly precluded, an executor being 'in privity' with his decedent for res judicata purposes."

Further, in the instant case, respondent Cambridge was not required to nor did it have any standing to object to appellant's claim in Galardi's bankruptcy proceeding.

---

[6]Webster's Third New International Dictionary, unabridged, at page 1805, defines "privity" as follows: "4 b: mutual or successive relationship to the same rights of property: the relationship between privities whereby they succeed to the same legal right or duty derived from a common source."

The trustee in bankruptcy, once he qualifies, is the party in interest within the meaning of section 502(a) of the Bankruptcy Act to object to claims filed by creditors. Section 704(4) of the same act provides that the debtor's trustee shall: "if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper."

The general rule applicable in such matters is that the trustee acts as the spokesman for all the creditors in the discharge of the trustee's duty unless the trustee refuses to take action. The right of individual creditors to object to the claim of another creditor, apart from the line of cases permitting some indirect mode of contest, is restricted in much the same manner as is the debtor's right. While either may object before a trustee qualifies or when there is no trustee, once such officer has qualified it is on him that the duty rests to examine and take action concerning claims which would appear to be disallowed against the debtor's assets. (3 Collier on Bankruptcy (15th ed.) § 502.01, p. 502-14.)

While the courts have, on occasion, distinguished the interests of a secured creditor from those of general creditors regarding their respective rights to bypass the trustee and challenge the claims of other creditors unless the trustee on application refuses to do so, it has done so in very limited situations and only for very narrow purposes, such as permitting a secured creditor to serve interrogatories on an unsecured creditor. (*Henry Ansbacher & Co.* v. *Klebanow* (2d Cir. 1966) 362 F.2d 569.) In *Ansbacher,* the court, at page 570, noted specifically that "Discovery matters are of an administrative character. They are not actions within the bankruptcy proceedings affecting title to property in a bankrupt's estate."

Respondents did not challenge appellant's secured creditor's claim in the bankruptcy court since they had no standing to do so once a trustee had been qualified for those purposes. ▇▇▇ Respondents were not guilty of laches and after the subject property had been released from the jurisdiction of the bankruptcy proceedings the filing of the appellant's claim in bankruptcy did not absolve it from complying with the 90-day foreclosure action requirement of Civil Code section 3144.

For the reasons set forth herein, this court finds that appellant's mechanic's lien foreclosure action was not timely filed and affirms the judgment of the trial court. That conclusion is dispositive of the matter and makes unnecessary any discussion of the other contentions of the parties.

The judgment is affirmed.

Feinerman, P. J., and Hastings, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 13, 1986.