**MISSCO HOMESTEAD ASS'N, Inc., v. UNITED STATES et al.**

No. 14101.

United States Court of Appeals
Eighth Circuit.

Nov. 1, 1950.

See also 8 Cir., 185 F.2d 283.

Max B. Reid, Blytheville, Ark. (Bruce Ivy, Osceola, Ark., on the brief), for appellant.

G. D. Walker, Assistant United States Attorney, Little Rock, Ark. (James T. Gooch, United States Attorney, Little Rock, Ark., on the brief), for appellees.

Before SANBORN and THOMAS, Circuit Judges, and DEWEY, District Judge.

DEWEY, District Judge.

The appeal is from an order of the Bankruptcy Court finding and adjudging the Missco Homestead Association, Inc., a bankrupt. The judge's opinion is to be found in D.C., 86 F.Supp. 511.

Missco Homestead Association, Inc., was duly incorporated under the supervision of officers of the F.S.A. on January 10, 1939. The plan and purpose of the incorporation was to borrow money from the United States government and to use it to lease large tracts of real estate and to divide and sublet the real estate to tenant farmers, and in general to provide a method and means for the rehabilitation and relief of needy farm families.

The Trial Court found that the petition was filed on March 12, 1945, and that fact is challenged by the United States of America, in a separate appeal, as it claims that the petition was filed on March 9, 1945. That question is decided in a separate opinion.

The first point argued by the appellant is that the court erred in findings that Missco Homestead Association, Inc., was a moneyed, business, or commercial corporation subjecting it to an adjudication in involuntary proceedings as authorized by Section 4, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 22, sub. b.

While Missco was incorporated under the provision of the statutes of Arkansas governing formation of benevolent corporations, yet the powers granted it were very broad and authorized it to engage in practically any business activity.

It borrowed large sums of money aggregating $149,620, from the United States government which it used in an endeavor to promote the interests of the tenant families and aiding them in engaging in their business of farming the land. It leased more than 6,000 acres of real estate which it sublet to tenant farmers. It maintained "several enterprises"; the care of livestock and rental equipment; a purchasing and marketing department, and it paid the rental for the land leased by it.

The activities of the purchasing department was to buy and sell supplies, and cotton seeds, to and from the members; and of the livestock department to buy and sell livestock; also there was a machinery department where repairs for the members and some outsiders was done. The Association also owned heavy equipment and did the heavy farm work for members and made a charge for that service. And in the loan agreement with the United States of America, it was provided that the loan was to be used by Missco for the following purposes:

"Operation of cooperative services on land now or hereafter leased or owned by the Association, including the construction, equipment and operation of facilities in connection with the leasing of realty to its members and in connection with purchasing, marketing, processing and other services."

At the first meeting of the Board of Directors it passed by-laws which provided for the determination and distribution of profits.

On November 10, 1944, the Missco Homestead Association, Inc., paid $2,500.00, to the lessor of the real estate and sold and transferred to said lessor for the sum of $8,938.72, certain personal property of the company to be credited as part payment of rent which was due December 1, 1944.

There were several of these cooperative corporations formed, some of them proved successful, others not.

From the foregoing statement it is apparent that Missco Homestead Association, Inc., was a moneyed, business, or a commercial corporation.

■ Congress, in classifying corporations subject to adjudication in bankruptcy, intended to include corporations which were engaged in enterprises for profit, but did not intend to include charitable, fraternal, educational, and literary or nonprofit corporations, none of which are conducted for profit.

A few cases hold that in determining whether a corporation is a member of the accepted class, the classification of the corporation by the State should be given predominate influence. In re Dairy Marketing Association of Fort Wayne, Inc., D.C., 8 F.2d 626; Hoile et al. v. Unity Life Ins. Co., 4 Cir., 136 F.2d 133, 136.

But in the light of the decision of the Supreme Court of the United States that in the interpretations and applications of the Bankruptcy Act, 11 U.S.C.A. § 1 et seq., as in the case of other federal statutes, federal and not local laws apply, this rule is questionable. Wragg v. Federal Land Bank, 317 U.S. 325, 63 S.Ct. 273, 87 L.Ed. 300.

In determining whether a corporation is within the classification of a moneyed business, or commercial corporation, it would seem the better rule to take into consideration the classification of the corporation by the state; the powers conferred upon it; and the character and extent of its main activities. See Remington on Bankruptcy (5th Edition) Vol. 1 Sec. 95.

■ The trial court was clearly right in finding that the Missco Homestead Association, Inc., although it may have been a cooperative society, was a moneyed, business, or commercial corporation. In re Wisconsin Co-operative Milk Pool, 7 Cir., 119 F.2d 999, Certiorari Denied, Wisconsin Co-operative Milk Pool v. First Wis. Nat. Bank of Milwaukee et al., 314 U.S. 655, 62 S.Ct. 105, 86 L.Ed. 525; Schuster v. Ohio Farmers Co-operative Milk Association, 6 Cir., 61 F.2d 337; Roumanian Workers Educational Ass'n. of America v. Popovich, 6 Cir., 108 F.2d 782.

Appellant also contends that the three plaintiffs and interveners, whom the court held to be creditors, should not be considered as such as they were not bona fide creditors of the alleged bankrupt with provable claims "fixed as to liability and liquidated as to amount".

■ In the original petition asking for the adjudication was the statement that a portion of the indebtedness to the United States of America arose from a promissory note dated February 2, 1939 for $111,120, principal, and interest, and then owing thereon $31,536.95, secured by chattel mortgage. Also a promissory note dated February 1, 1940, for $38,500.00, and due thereon, $24,449.84, which bore interest at three per cent. No claim is made in the petition of any security on this note. At the trial it was stipulated that Exhibit No. 14 is a true copy of the "mortgage note" dated February 1, 1940, executed by said Association through its officers in the principal sum of $38,500.00. The stipulation does not state that there was any security for the note at the time the petition was filed. The record also discloses that the United States of America requires security for its loans. It might be inferred from the statement in the stipulation and this requirement of the government that there was a mortgage from Missco to secure this note at the time it was executed. But as no claim is made in the petition of any security for the note it was waived. Mount Vernon Hotel Co. v. Block et al., 9 Cir., 157 F.2d 637; Morrison v. Rieman, 7 Cir., 249 F. 97, 101, and 102.

And it is evidence that such waiver was done intentionally by the government as its attorney stated during the trial that he "renounced any lien the United States may have had on any property of Missco".

The decision of the trial judge to the effect that the United States of America was a bona fide creditor and had a provable claim, fixed as to liability and liquidated as to amount was clearly supported by the evidence.

Also the Arkansas Central Cooperative Association and the Memphis Sales Service were creditors. The books of Missco showed a credit in favor of Arkansas Central Cooperative Association of $63.31, and a credit in favor of Memphis Sales Service of $25.55.

Their accounts were described by one of the witnesses as being "clearing accounts". The tenant farmers when they had cotton for sale would have Missco corporation send the cotton to these companies and the companies would send Missco a check for the sales with a detailed statement. There would be some twenty to fifty tenant farmers interested in these transactions.

The accounts hardly ever balanced exactly on account of various items included, as freight, commissions and storage charges on each distribution. The amount of the credits would indicate the difference paid. Missco had a lien for one-fourth of the value of the cotton as rent.

 The credits were entered because of an overpayment to the Missco Company by mistake and this resulted in a quasi contractual relation existing from that date which required Missco to repay these overpayments. 12 Am.Jur. (Contracts) Section 6, p. 502.

As the filing of the petition in bankruptcy tolled the statute these claims were not barred by the Arkansas statute of limitations. Title 11 U.S.C.A. § 29, sub. b.

The original petition was filed by the United States of America, and joined in by six individuals. One of the claims of the appellant is that these individuals were induced to join in the proceedings by fraud and misrepresentation made by agents of the United States, and as a result they were induced to join in the petition and this was a fraud upon the court to confer jurisdiction.

There is authority to the effect that a fraudulent statement made to a creditor or a false statement made as of one's own knowledge carelessly and not caring whether it is true or false, inducing him to sign a petition for involuntary bankruptcy would constitute a fraud on such petitioner and the court, and this would invalidate the petition. Myron M. Navison Shoe Co., Inc. v. Lane Shoe Co., 1 Cir., 36 F.2d 454.

 However, there is no evidence here of any fraudulent statements, or statements made carelessly or indifferently without knowledge as to the truth of the facts stated. All of these six individual petitioners were examined as witnesses and while they admitted to a very slight knowledge of what they were signing there were no false representations. The agents deny the making of any statements that might have been misleading so that the question, if any, of fraud was one of fact to be determined by the court.

The foregoing answers all of the points argued in writing in the appellant's brief, but we have carefully considered the points relied upon by the Missco Homestead Association, Inc., which were not so argued and find them without merit.

It follows that the appeal in cause No. 14,101 from the decision of the court finding and adjudicating Missco Homestead Association, Inc., bankrupt, should be and the same is hereby

Affirmed.