In the Matter of **SABRE SHIPPING CORPORATION, Debtor.**
**No. 64 B 813.**

United States District Court
S. D. New York.
April 1, 1969.

Robert J. Blum, New York City, for claimant.

Levy, Levy & Ruback, New York City, for debtor.

MANSFIELD, District Judge.

In this Chapter XI Arrangement proceeding the debtor, Sabre Shipping Corporation ("Sabre"), seeks review of the Referee's allowance of the claim of Judson Sheldon International Corporation ("Judson"); the claimant has also brought on a petition for review claiming that interest on its claim should have been allowed. The proof of claim in the bankruptcy proceeding stated:

"By mistake, claimant paid a bill of the bankrupt twice. Bankrupt refused to refund on demand. Amount is $3,896.10 with interest from Apr. 27,

1962 to date of bankruptcy Oct. 16, 1964 $578., total $4,474.10."

In his decision Referee Ryan held that "the debtor is required to restore to [Judson] the sum of $3,896.10, the amount by which it has been unjustly enriched, without interest."

The Referee, in a decision which was justifiably critical of the parties for their failure to present proof in an organized and concise manner, found the following: In 1962 Sabre, then engaged in ocean transportation of cargo, operated a vessel, the "Nordstern," between Japan and the United States. In January of 1962 Sabre issued eight bills of lading to Pacific Wood Products Co. ("Pacific"),[1] as consignee, covering shipments transported by Sabre from Japan to the United States; arrival notice as to six of the bills was sent to Judson, Pacific's freight forwarder, at a California address, and as to the other two to Pacific, also in California.

The total freight of $3,896.10 for the foregoing shipments was paid by Judson to Sabre on March 21, 1962 in New York. Shortly thereafter (March 27, 1962) Sabre received a second payment of $3,621.42 from Western Maritime Agency Incorporated ("Western"), which served as Sabre's agent in transactions with Pacific, covering the $3,896.10 freight charges for the same shipments, less Western's commission of $274.68. The $3,621.42 payment was returned by Sabre to its agent Western for the reason that it duplicated the payment received by it directly for the same shipments, which Sabre had already collected in New York from Judson.

*The Petition of Sabre*

Sabre claims that it was clearly erroneous for the Referee to find:

(a) that there was a duplicate payment by mistake;

(b) that payment was made to Western by either Judson or Pacific;

(c) that Western was acting as agent for Sabre;

(d) that Pacific or Judson was not repaid by Western.

■■ There is some controversy between the parties here as to the effect of the sworn proof of claim in these proceedings. A leading case, Whitney v. Dresser, 200 U.S. 532, 26 S.Ct. 316, 50 L.Ed. 584 (1906), held that a proof of claim cannot be defeated by mere formal objection and that the sworn proof is to be treated "as some evidence even when it is denied." 200 U.S. at 536, 26 S.Ct. at 317. This rule does not, however, affect the burden of proof. Therefore, if substantial evidence is introduced in opposition, the claimant must still prove its claim by a preponderance of the evidence. In re George R. Burrows, Inc., 156 F.2d 640 (2d Cir. 1946). The sworn proof of claim, however, does not disappear from the case; like a deposition of the claimant, it is still entitled to some weight as a sworn statement with respect to the matters asserted therein. In re Falk, 83 F.Supp. 817, 820 (S.D.N.Y. 1949). See also Whitney v. Dresser, supra, 200 U.S. at 534-535, 26 S.Ct. 316. Absent contradictory evidence, the Referee is entitled to rely upon the proof of claim itself as establishing those facts in issue.

■ There was evidence in the record from which it could be inferred that a duplicate payment was made. There was direct proof of payment by Judson to Sabre in New York, together with adequate circumstantial evidence in the form of a letter from Sabre to Western returning the remittance and explaining that payment had already been made, from which it could reasonably be inferred that another payment had been made by either Judson or Pacific to Western. The fact that, according to the testimony of Sabre's president, there was no actual record of duplicate payment in Sabre's files does not substantially con-

---

1. Pacific has assigned any claim which it may have with respect to the alleged duplicate payment to Judson.

tradict the evidence that there was such a duplicate payment.

■■ Sabre argues that the Referee was not entitled to infer that a duplicate payment was made; it is settled beyond dispute however, that a claim may be established by circumstantial evidence; a trier of fact is always entitled to draw reasonable inferences from such evidence, and under the clearly erroneous standard such inferences will not be upset unless the reviewing court is convinced that a mistake has been made. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948); Iravani Mottaghi v. Barkey Importing Co., 244 F.2d 238, 248 (2d Cir. 1957).

■ The finding that Western was acting as agent for Sabre in receiving payment on this shipment was also supported by evidence in the record. Although, as Referee Ryan noted, the evidence with respect to this issue was meager, there was testimony by Sabre's president that Western was authorized to make bookings and receive payment on behalf of Sabre. There was no evidence that Western lacked authority to receive the payment which it forwarded to Sabre with respect to the shipments here in issue; the check was returned by Sabre to Western only because payment had already been made directly by Judson to Sabre.

■ Since it may be inferred that Western had collected the duplicate payment on behalf of Sabre as its agent, and it appears that collection of payments was within the scope of Western's authority as agent, it seems equitable that the principal, Sabre, should be held responsible for its agent Western's retention of the duplicate payment. Although it may be argued that since Sabre never retained the benefit of the duplicate payment it should not be compelled to make restitution for its agent and that Judson should be relegated to an action against Western (the ultimate recipient of the second payment), it is well settled that a principal such as Sabre is responsible for the negligent, fraudulent or wrongful acts of its agent committed within the scope of the agent's apparent authority. See Restatement 2d, Agency §§ 216, 261 (1958). Sabre could have avoided liability by returning the overpayment to Pacific or Judson directly rather than assuming that its agent Western would do so; its liability is not, therefore, an overly severe consequence of the transaction. Sabre would plainly have a claim over against Western here, although there is some suggestion in the record that Western is insolvent. Even so, as between Judson and Sabre the ultimate loss should be borne by Sabre, since it could have taken steps to rectify the mistake arising out of its agent's conduct.

■ The final point made by Sabre with respect to the Referee's findings is that there was no evidence that Western did not in fact repay the duplicate payment to Judson or Pacific. This contention is without merit. The proof of claim constitutes evidence that no such repayment was made, and Sabre brought forward no contradictory proof. If there was such a repayment by Western, Sabre would have had access to evidence of such repayment by virtue of its relationship with Western, but no such proof was adduced. The general statement by Sabre's president that there was no evidence of a duplicate payment in its own files is not sufficient to raise an issue with respect to possible repayment by Western, and, since there is nothing else which Sabre could in any way rely upon, this contention must be dismissed.

■ Sabre, in addition to its attacks on the Referee's findings, asserts that the Referee reached an erroneous conclusion of law. It states quite properly that restitution of money paid through a mistake will be denied where the party that has received the money has changed its position in reliance upon this receipt. See Restatement, *Restitution* § 142 (1937). The asserted change of position here is, however, legally irrelevant. Sabre merely points out the obvious: that upon receipt of the first payment it gave up whatever rights it had in the cargo. This does not demonstrate any change of position in reliance

on the *duplicate* payment, which is what would be required to defeat a claim for restitution. Sabre also asserts that the claim should not have been allowed because the claimant did not show that the overpayment was a mistake of fact rather than a mistake of law for which no restitution would be ordered. See Adrico Realty Corp. v. City of New York, 250 N.Y. 29, 164 N.E. 732, 64 A.L.R. 1 (1928). No evidence was adduced to demonstrate that the mistake was one of law rather than fact, and in these circumstances it is almost impossible to conceive what type of mistake of law could have been made. This contention states an affirmative defense as to which no proof was brought forward by the debtor and must be dismissed.

### The Petition of Judson

 Claimant Judson asserts that it is entitled to interest on its claim. Insofar as it seeks any interest for a period after the filing of the initial involuntary petition against Sabre on October 16, 1964, its claim is wholly without merit. It is a general principle in bankruptcy that claimants cannot recover interest for any period after the date of the filing of the petition, Nicholas v. United States, 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966); Sexton v. Dreyfus, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244 (1911), except in those rare cases where there is a surplus remaining after the payment of the claims against the estate. Hammer v. Tuffy, 145 F.2d 447 (2d Cir. 1944). Furthermore, this is an arrangement proceeding in which an order of confirmation has been entered; claimant is entitled only to "the rights provided by the arrangement," Bankruptcy Act § 370 (11 U.S.C. § 770), the plan of which explicitly provides with respect to claims such as that of Judson that "In no event shall there be paid to any creditor more than the full amount of his claim, without interest * * *." Judson is bound by this plan, and cannot seek more favorable treatment than other claimants in his category.

 Judson's claim that it is entitled to interest to the date of the filing of the petition is more substantial. This claim is allowable as a provable debt under § 63(a) (4) of the Bankruptcy Act, 11 U.S.C. § 103(a) (4), as founded upon "an open account, or a contract express or implied," since it is a quasi-contractual obligation imposed upon the debtor by virtue of the receipt of an overpayment. Missco Homestead Ass'n v. United States, 185 F.2d 280, 22 A.L.R.2d 1015 (8th Cir. 1950). While no explicit provision is made for interest with respect to claims under § 63(a) (4) [cf. § 63(a) (1)], it would seem that any interest which would have been recoverable at the date of the filing of the petition would be allowable against the estate as a part of the provable claim. See 3A Collier on Bankruptcy ¶ 63.23 at 1886–1887, n. 21 and accompanying text (1968).

 The question of whether or not interest would have been recoverable against the debtor at the time of the filing of the petition is one of state substantive law as in a diversity case under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). See 3A Collier on Bankruptcy ¶ 63.23 at 1885. Applying the grouping of contacts theory that a New York state court would utilize in determining a choice of law question, we conclude that since both Sabre and Judson are New York corporations, at least one of the payments in issue was made in New York, and it is in a bankruptcy proceeding in New York that the question is being litigated, a state court in New York would apply the law of the forum. Cf. Auten v. Auten, 308 N.Y. 155, 124 N.E.2d 99, 50 A.L.R.2d 246 (1954); Zogg v. Penn Mutual Life Ins. Co., 276 F.2d 861 (2d Cir. 1960). Under New York law the allowance of interest in an action of an equitable nature such as this, if it had been brought in the state court, would have been within the discretion of the trial judge. New York C.P.L.R. § 5001(a). Although in similar circumstances interest has been allowed from the date of demand, Neimark v. Martin, 7 A.D.2d 934, 183 N.Y.S.2d 812 (1959) (recovery of attorney's fees in quantum meruit),

Mac Intyre v. State Bank of Albany, 307 N.Y. 630, 120 N.E.2d 832 (1954) (recovery based upon illegal transfer of property), or from an earlier date in cases of actual fraud, Ruderman v. United States, 355 F.2d 995, 998 (2d Cir. 1966), in this instance the disallowance of interest would not constitute an abuse of discretion. Sabre, although it may be held responsible for the failure of its agent to return the duplicate payment, has not had the benefit of the money for its own use. In such circumstances the payment of interest need not be compelled, and we conclude that the Referee's failure to allow any interest was proper.

For the foregoing reasons the petitions of Sabre and Judson are denied.

It is so ordered.