**In re Micheal BRAY and Jayne Bray, Debtors.**

**Planned Parenthood of the Columbia/Willamette, Inc., Portland Feminist Women's Health Center, Robert Crist, M.D., Warren M. Hern, M.D., Elizabeth P. Newhall, M.D., and James Newhall, M.D., Plaintiffs,**

v.

**Michael Bray, Defendant.**

**Bankruptcy No. 99–24259–DK.**

**Adversary No. 00–1288–DK.**

United States Bankruptcy Court, D. Maryland, at Greenbelt.

Nov. 15, 2000.

Maria T. Vullo, New York City, Gaela Gehring–Flores, Paul, Weiss, Rifkind, Wharton & Garrion, Washington, DC, for plaintiff.

Kevin Kulesa, Bartolini, Capriolo & Kulesa, Eldersburg, MD, for defendant.

### MEMORANDUM OF DECISION

DUNCAN W. KEIR, Bankruptcy Judge.

Before the court is plaintiffs' motion for summary judgment on the first cause of action in its complaint and defendant's response thereto. For the reasons set forth below, the motion for summary judgment shall be granted.

Defendant's liability to plaintiffs arises from a prepetition lawsuit commenced in October 1995, in the United States District Court for the District of Oregon ("Oregon Litigation"). In the Oregon Litigation, plaintiffs sought damages and a permanent injunction against defendant, and other individuals, pursuant to the Freedom of Access to Clinic Entrances Act ("FACE"), 18 U.S.C. § 248. FACE provides, *inter alia,* that an injured person may obtain monetary and injunctive relief against someone who,

> "by force or threats of force ... intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person ... from ... providing reproductive health services."

18 U.S.C. §§ 248(a)(1) and (c)(1).

On February 2, 1999, after thirteen days of trial and four days of deliberations, the jury in the Oregon Litigation found that defendant, along with other individuals, had violated FACE by taking part in the preparation and dissemination of three "wanted style" posters (the "Wanted Posters") at abortion rallies and over the internet. The Wanted Posters identified plaintiffs by name as abortion providers, and

provided plaintiffs' home and work addresses. The jury found each poster to be a "true threat,"[1] and charged debtor/defendant with a total of $526,336.14 for compensatory damages, (for security costs incurred by plaintiffs), and assessed an additional $8,000,000 in punitive damages. Judgment in the above stated amount was entered by the District Court for the District of Oregon on February 22, 1999.

Pursuant to 18 U.S.C. § 248(c)(1)(B), and upon consideration of the same evidence admitted at trial and presented to the jury, the Oregon Court permanently enjoined debtor from continuing his "unlawful threats that place plaintiffs' lives in peril ...." *Planned Parenthood of the Columbia/Willamette, Inc. v. American Coalition of Life Activists, et al.*, 41 F.Supp.2d 1130, 1154 (D.Or.1999). As did the jury, the trial judge concluded that debtor and the other defendants "acted with specific intent and malice in a blatant and illegal communication of true threats to kill, assault or do bodily harm to each of the plaintiffs and with the specific intent to interfere with or intimidate the plaintiffs from engaging in legal medical practices and procedures." *Id.*

In balancing the equities of granting injunctive relief, the court found overwhelmingly in favor of plaintiffs, stating that

> In the absence of an injunction, plaintiffs will continue to live as they did before the trial: clad in bulletproof vests and disguises, borrowing cars and varying routes to avoid detection, and constantly in fear of the bodily harm with which they have been threatened.

> [ ] By contrast, the prohibition of unlawful activities imposes no burden on defendants. Defendants may protest abortion using legitimate, lawful means. *Id.*

Under their first cause of action, plaintiffs assert that the Oregon judgment is nondischargeable pursuant to 11 U.S.C. § 523(a)(6), as a debt incurred "for willful and malicious injury by the debtor to another entity or to property of another entity." Plaintiffs maintain that all elements of section 523(a)(6) have already been determined by the Oregon court and jury, and that summary judgment may therefore be granted on collateral estoppel grounds.

 It is well established that four requirements must be satisfied in order for the doctrine of collateral estoppel to apply: (i) the issue sought to be determined by collateral estoppel must be identical to the issue that was involved in the prior proceeding; (ii) that issue must have been actually litigated in the prior proceeding; (iii) it must have been determined by a valid and final judgement; and (iv), such determination must have been essential or necessary to the entry of the final judgement in the prior proceeding. *Kelly v. Armstrong*, 141 F.3d 799, 801 (8th Cir. 1998). If all four requirements are satisfied, the doctrine of collateral estoppel will preclude re-litigation of the factual finding by a party who had a full and fair opportunity to litigate the issue in the prior proceeding. *Tuttle v. Arlington County School Board*, 195 F.3d 698, 703 n. 6 (4th Cir.1999), *cert. dismissed*, 529 U.S. 1050, 120 S.Ct. 1552, 146 L.Ed.2d 364 (2000); *Sedlack v. Braswell Services Group, Inc.*, 134 F.3d 219, 224 (4th Cir.1998)(counting "full and fair opportunity to litigate" as a fifth element).

 In responding to the motion for summary judgment, debtor argues that

---

1. In its instructions to the jury, the court defined a "true threat" as a statement made where "a reasonable person, making the statement would foresee that it would be interpreted, by those to whom it is communicated, as a serious expression of intent to bodily harm or assault. This is an objective standard, that of a reasonable person." Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, Exhibit E, p. 14 (hereinafter "Jury Instructions").

the first element for collateral estoppel is not met, that the issue to be precluded in this case is not "identical" to the issue decided in the Oregon Litigation. Debtor cites *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) for the proposition that only where the actor *intended* the harm, will the debt incurred be nondischargeable. As stated by the *Geiger* court, "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Id.* at 61, 118 S.Ct. 974. Debtor argues that collateral estoppel is not appropriate in this case because the trial judge instructed the jury that it could use a "reasonable person" test in determining whether debtor intended the consequences of his actions. Debtor maintains that the use of the phrase "reasonable person," amounted to the application of the classic test for negligence, and accordingly did not measure debtor's intent in participating in the creation and dissemination of the Wanted Posters directed at plaintiffs.

Debtor misconstrues the jury instructions. The Oregon court charged the jury that it could find a defendant guilty of making a "true threat," if "a reasonable person, making the statement would foresee that it would be interpreted, by those to whom it is communicated, as a serious expression of intent to bodily harm or assault." *Jury Instructions,* p. 14. The court continued: "This is an objective standard, that of a reasonable person." *Id.* In other words, the phrase "reasonable person" was used to convey to the jury that they were to use an objective standard in measuring defendant's intent to harm plaintiffs. Defendant's assertion that the term "reasonable person" allowed the jury to find a violation of FACE based on defendant's *negligent* statements is simply incorrect.

Because the court instructed the jury to determine debtor's intent to harm the plaintiffs, the *Geiger* standard for nondis-

chargeability was met. *See, e.g. Miller v. Abrams, Inc. (In re Miller),* 156 F.3d 598, 603 (5th Cir.1998) ("either objective substantial certainty or subjective motive meets the Supreme Court's definition of 'willful . . . injury' in § 523(a)(6)."); *accord Markowitz v. Campbell (In re Markowitz),* 190 F.3d 455, 464 (6th Cir.1999); *In re Cox,* 243 B.R. 713 (Bankr.N.D.Ill.2000); *but see, Florida Outdoor Equipment, Inc. v. Tomlinson (In re Tomlinson),* 220 B.R. 134 (Bankr.M.D.Fla.1998) (stating that acts "substantially certain" to cause injury may not satisfy the *Geiger* standard).

All doubt about whether the necessary elements of 11 U.S.C. § 523(a)(6) were established by the Oregon litigation is removed upon a review of Oregon court's opinion granting injunctive relief. In granting the injunction, the court found that defendants "acted with specific intent and malice in a blatant and illegal communication of true threats to kill, assault or do bodily harm to each of the plaintiffs and with the specific intent to interfere with or intimidate the plaintiffs from engaging in legal medical practices and procedures." 41 F.Supp.2d at 1154.

In sum, based upon both the findings of the jury and the Oregon court, this court concludes that the issue of whether debtor intended to harm plaintiffs by issuing "true threats" has been actually and necessarily determined. Although debtor has filed an appeal, the Oregon judgment constitutes a valid and final order for the purposes of collateral estoppel. *Timmons v. Special Ins. Servs.,* 984 F.Supp. 997, 1008 (E.D.Tex.1997) ("pendency of an appeal does not affect the finality of a judgment for purposes of res judicata or collateral estoppel."); *see also, Canedy v. Boardman,* 16 F.3d 183, 185 (7th Cir.1994). Debtor also had a full and fair opportunity to participate in the Oregon Litigation. Finally, because debtor, in the words of the Oregon court, acted with "specific intent and malice," this court finds the Oregon judgment to be nondis-

chargeable pursuant to 11 U.S.C. § 523(a)(6). A separate order shall issue.