**In re Robert W. McGEE and Janis S. McGee, Debtors.**

**No. 98–6–5599–JS.**

United States Bankruptcy Court, D. Maryland.

Jan. 12, 2001.

Anthony J. DiPaula, DiPaula and Sullivan, LLC, Bel Air, Maryland, Mark S. Devan, Covahey and Boozer, P.A., Towson, Maryland, for the claimants.

Lawrence J. Yumkas, Douglas B. Riley, Rosenberg, Proutt, Funk & Greenberg, LLP, Baltimore, Maryland, for the debtors.

Ellen W. Cosby, Baltimore, Maryland, Chapter 13 Trustee.

---

*MEMORANDUM OPINION ALLOWING CLAIMS OF BENFIELD ELECTRIC CO., INC., AND RIDGE HEATING, AIR CONDITIONING & PLUMBING, INC., BASED UPON THE MARYLAND CONSTRUCTION TRUST STATUTE AS TO DEBTOR ROBERT W. McGEE AND DISALLOWING SAID CLAIMS AS TO JANIS S. McGEE*

JAMES F. SCHNEIDER, Bankruptcy Judge.

The debtors, Robert W. McGee and Janis S. McGee, filed the instant Chapter 13 bankruptcy petition on November 4, 1998. On April 1, 1999, the debtors filed objections to the claims of Benfield Electric Co., Inc. ("Benfield") and Ridge Heating. Air Conditioning & Plumbing, Inc. ("Ridge"). For the following reasons, the objection of Janis S. McGee will be sustained, the objection of Robert W. McGee will be overruled and the said claims will be allowed, but only as to Mr. McGee.

### FINDINGS OF FACT

On February 16, 1999, Benfield and Ridge filed proofs of claim in the instant Chapter 13 case in the respective amounts of $90,877.65, and $357,816.41 [1], based upon judgments obtained by the claimants against Keystone Homes, Inc., in the Circuit Court for Harford County [Carr, J.], entered on February 9, 1999. Each proof of claim contained the following attachment:

### BASIS FOR CLAIM

1. The Debtors, Robert William McGee and Janis Smith McGee, jointly owned one hundred percent (100%) of the stock in the following corporations, being development projects at which labor and materials were supplied by the Claimant herein, creating the debt which is the subject of this claim. Those corporate

---

1. On September 8, 1999, at the first hearing on the objections. Benfield and Ridge reduced their respective claims to $77,222 and $293,622, reflecting only those sums "directly traceable to draw payments on the specific projects." Memorandum in Support of Claims, fn. 1 [P. 63].

ownership entities are listed on Schedule B of the Debtor's Petition as follows: Keystone Homes at Hickory Overlook, Inc.; Keystone Homes at Spenceola Farms, Inc.; Keystone Homes at Waterford Commons, Inc.; Keystone Homes at the Reserve, Inc.

2. The Debtors were ninety percent (90%) joint owners of a corporation known as Keystone Homes, Inc., the remaining ten percent (10%) being owned five percent (5%) each by two other members of the McGee family. Keystone Homes, Inc. was, on information and belief, the building entity on behalf of the other Keystone Homes entities which were developing the various projects. All of the entities share common ownership, officers, offices, and management.[2]

3. That each of the development projects was funded by substantial construction loans, the lenders on which disbursed substantial funds during the course of construction to pay the costs of the labor and materials supplied by construction trades such as the Claimant herein who supplied heating and air conditioning labor and materials, as well as plumbing labor and materials.

4. That the funds from the construction loans, it is believed and averred, were either disbursed directly to Keystone Homes, Inc., the entity owned and controlled by the Debtors, or disbursed to the other Keystone Homes entities that actually owned the development projects, who then in turn disbursed those funds to Keystone Home, Inc., all of which entities were controlled, operated and managed by the Debtors.

5. That the construction loans disbursed and managed by the Debtors were not held in trust as required by Title 9, Subtitle 2 of the Maryland Real Property Code Annotated, to pay the suppliers of materials or labor such as the Claimant herein, but were instead retained or utilized for purposes other than to pay those for whom the money was intended such as the Claimant, thereby subjecting the Debtors to personal liability in accordance with Section 9–202 of the Maryland Real Property Code.

*Id.*

The claimants asserted that the debtors' individual liability for the claims against the corporation arose under the Maryland Construction Trust Statute, Sections 9–201 through 9–204 of the Real Property Article of the Maryland Annotated Code.

In their objections, the debtors denied liability to the claimants under the Maryland Construction Trust Statute, denied that they had violated the statute and denied that they or the corporation had retained draws earmarked for the claimants. Mr. McGee was president and the principal corporate officer of Keystone Homes, Inc., but there has been no showing that Mrs. McGee was an "officer, director, or managing agent" of any of the corporations alleged to have defaulted on payments to the claimants.

## CONCLUSIONS OF LAW

### THE MARYLAND CONSTRUCTION TRUST STATUTE

The Maryland Construction Trust Statute creates a statutory trust relationship between a contractor who has been paid by an owner and a subcontractor for whose work an owner has paid the contractor. Upon receiving payment from the owner, the contractor holds the funds in trust for the benefit of the subcontractor who performed work or the suppliers who provided materials for the project. The statute provides:

§ 9–201 **Moneys to be held in trust; commingling.**

(a) *Moneys to be held in trust.*—Any moneys paid under a contract by an owner to a contractor, or by the owner

2. The other corporate entities were Subchapter S corporations that were subsidiaries of Keystone Homes, Inc. *See* I.R.C. Subt. A, Ch. 1, Subch. S.

or contractor to a subcontractor for work done or materials furnished, or both, for or about a building by any subcontractor, shall be held in trust by the contractor or subcontractor, as trustee, for those subcontractors who did work or furnished materials, or both, for or about the building, for purposes of paying those subcontractors.

(b) *Commingling.*—(1) Nothing contained in this subtitle shall be construed as requiring moneys held in trust by a contractor or subcontractor under subsection (a) of this section to be placed in a separate account.

(2) If a contractor or subcontractor commingles money held in trust under this section with other moneys, the mere commingling of the moneys does not constitute a violation of this subtitle.

**§ 9–202 Liability for retention or use of moneys held in trust under S 9– 201 of this subtitle.**

Any officer, director, or managing agent of any contractor or subcontractor, who knowingly retains or uses the moneys held in trust under § 9–201 of this subtitle, or any part thereof, for any purpose other than to pay those subcontractors for whom the moneys are held in trust, shall be personally liable to any person damaged by the action.

**§ 9–203. Misuse of funds prima facie evidence of intent to defraud.**

Repealed by Acts 1995, ch. 436, effective October 1, 1995.

**§ 9–204 Applicability of subtitle; definitions.**

(a) *In general.*—This subtitle applies to contracts subject to Title 17, Subtitle 1 of the State Finance and Procurement Article, known as the "Maryland Little Miller Act", as well as property subject to § 9–102 of this title.

(b) *Exceptions contracts.*—This subtitle does not apply to:

(1) A contract for the construction and sale of a single family residential dwelling; or

(2) A home improvement contract by a contractor licensed under the Maryland Home Improvement Law.

(c) *Definitions.*—In this subtitle, "owner", "contractor", and "subcontractor" have the same meanings as in § 9–101 of this title.

Md.Code Ann., [Real Prop.] §§ 9–201 to 9–204. Section 9–101 is the definitional section of the Maryland Mechanic's Lien Law, which provides as follows:

§ 9–101 *Definitions.*

(a) *In general.*—In this subtitle the following words have the meanings indicated.

(b) *Building.*—"Building" includes any unit of a nonresidential building that is leased or separately sold as a unit.

(c) *Contract.*—"Contract" means an agreement of any kind or nature, express or implied, for doing work or furnishing material, or both, for or about a building as may give rise to a lien under this subtitle.

(d) *Contractor.*—"Contractor" means a person who has a contract with an owner.

(e) *Land.*—"Land" means the land to which a lien extends under this subtitle or the land within the boundaries established by proceedings in accordance with the Maryland Rules. "Land" includes the improvements to the land.

(f) *Owner.*—"Owner" means the owner of the land except that, when the contractor executes the contract with a tenant for life or for years, "owner" means the tenant.

(g) *Subcontractor.*—"Subcontractor" means a person who has a contract with anyone except the owner or his agent.

Md.Code Ann., [Real Prop.] § 9–101.

The statute is applicable to the instant case because it applies to buildings that are subject to the Maryland mechanics' lien statute, Md.Code Ann., [Real Prop.] § 9–101, *et. seq.,* as were the buildings in this case, and the debtors' corporation,

through its Subchapter S subsidiaries, was the owner of the properties as well as the contractor engaged in the construction of the buildings. Md.Code Ann., [Real Prop.] § 9–204(a).

▪ Mr. McGee set up Subchapter S corporations for the various projects to purchase and own the land that Keystone developed. Then Keystone borrowed money to purchase the land in the name of the Subchapter S corporations and to develop the land. The loans were paid directly to Keystone, not to the individual Subchapter S owners. The statute creates a trust when the money is paid to the contractor by the owner for payment to subcontractors and materialmen. The debtors argued that the statute is not applicable because the debtors' corporations were both owners and contractors, and that by reason of their identity, Ridge and Benfield may not invoke the statute.

This contention was rejected by the Maryland Court of Special Appeals in a similar context, one involving the fixing of a mechanic's lien, in the case of *Skinner Logsdon Constr. and Equip., Inc. v. First United Church,* 88 Md.App. 434, 594 A.2d 1245 (1991). There, the court held that

In light of the history of the [mechanic's lien] statute, its purpose and liberal construction afforded it, we conclude that the legislature intended that a subcontractor can invoke the mechanic's lien law when it contracts with a contractor who also happens to be the property owner.

88 Md.App. at 440, 594 A.2d at 1248. The court found no evidence in the history of the definition section "of a legislative intent to preclude a subcontractor from acquiring a mechanics' lien when an owner decides to be its own general contractor." *Id.* The court found the intent of the Maryland Legislature that the statutory definitions be harmonized with judicial precedent, and that "Maryland has implicitly accepted the notion that the same entity can function in a dual capacity, as both owner and contractor, in mechanics' lien

cases," citing *Wohlmuther v. Mt. Airy Plumbing and Heating, Inc.,* 244 Md. 321, 326, 223 A.2d 562, 564 (1966) (Notice to an owner required by the mechanics' lien law was unnecessary when the owners were also the prime contractors.) *Id.* at 325–327, 223 A.2d at 565. The Court of Special Appeals found that privity already existed between the subcontractor and the owner, and characterized the "contractor/owner relationship" in *Skinner Logsdon* as "a legal fiction" where the defendant church chose to operate as both owner and contractor. The same rationale obtains in the instant case, where the purpose of the Construction Trust Statute to protect subcontractors will not be defeated because of the debtor-controlled corporations' elaborate structures and designations as owners and contractor.

▪ The debtors' argument that because Section 9–204 does not apply to single family dwellings, the townhouses constructed by Keystone are excepted from the statute's application, is flawed. Section 9–204(b)(1) by its terms excepts "a contract for the construction and sale of *a single family residential dwelling*" from the scope of the statute, the correct reading of which leads to the conclusion that it does not apply to one contract for the construction of one house. Md.Code Ann., [Real Prop.] § 9–204(b)(1) [emphasis added]. On the other hand, it certainly applies to one or more contracts for the construction of more than one single family dwelling.

▪ The debtors also dispute the corporate liability on the debts and their own individual liability under the Maryland statute as it is applied in bankruptcy. In addition, they argue that all of the claimants' invoices were paid in full, despite the claims filed in this case by Ridge and Benfield. However, this Court holds that the debtors are bound by collateral estoppel, which precludes the debtors from disputing the liability of Keystone which has already been determined by the entry of

judgments against that corporation by the Circuit Court for Harford County.

■ In order for the doctrine of collateral estoppel to apply to the judgments, four requirements must be satisfied: (1) the issue sought to be determined must be identical to the one decided in the prior adjudication; (2) the issue must have been actually litigated in the prior adjudication; (3) there was a final judgment on the merits; and (4) the determination must have been essential or necessary to the entry of the final judgment. *Kelly v. Armstrong,* 141 F.3d 799, 801 (8th Cir.1998); *Planned Parenthood of the Columbia/Willamette, Inc. v. Bray (In re Bray),* 256 B.R. 708 (Bankr.D.Md.2000). If the four requirements have been met, relitigation by a party who had a full and fair opportunity to litigate the issue in the prior proceeding will be precluded by the doctrine of collateral estoppel. *Id., (citing Tuttle v. Arlington County School Board,* 195 F.3d 698, 703 n. 6 (4th Cir.1999), *cert. dismissed,* 529 U.S. 1050, 120 S.Ct. 1552, 146 L.Ed.2d 364 (2000); *Sedlack v. Braswell Services Group, Inc.,* 134 F.3d 219, 224 (4th Cir.1998)).

The circuit court's entry of the judgments against Keystone satisfies the requirements of collateral estoppel. Those judgments are claims against the corporation that Mr. McGee owned and controlled. However, the judgments by themselves do not prove that the debtors violated the Maryland Construction Trust Statute by failing to satisfy the claims of Benfield and Ridge, only that the claims were unpaid by the corporation.

The statute takes corporate liability a step further. It pierces the corporate veil to hold personally liable those officers and directors found to exercise control over the corporation that failed to pay subcontractors and suppliers because the officers and directors retained funds earmarked by statute. The factual predicate for the stat-

ute's application is proof of failure to pay to claimants funds held in trust under the statute by reason of the diversion or retention of the funds by those in control of the corporation. Under these circumstances, corporate managers protected by the corporate status of their companies may be stripped of the usual protections insulating them from claims against the corporation.

■ In the case of *CRL of Maryland v. Holmes (In re Holmes),* 117 B.R. 848 (Bankr.D.Md.1990), this Court held that the Maryland Construction Trust Fund Statute did not convert a contractor into a fiduciary for purposes of nondischargeability under 11 U.S.C. § 523(a)(4):

> The Maryland Construction Trust Statute imposes a trust upon the performance of an act (the payment of funds) irrespective of the intentions of the parties and therefore it is a trust implied in law. According to this analysis, the debt is dischargeable because the act or omission of the debtor was not a breach of fiduciary duties contemplated by Congress in its enactment of Section 523(a)(4).

117 B.R. at 852–53. However, dischargeability of debt is not an issue in Chapter 13, as opposed to Chapter 7. 11 U.S.C. § 1328. Neither is the fact that the trust in question was imposed by statute and is therefore a trust implied in law as opposed to an express trust created by the intention of the parties themselves.[3] In the context of the allowance of claims, the Bankruptcy Code recognizes the validity of trusts implied in law, such as statutory trusts, constructive trusts and resulting trusts, and accords them due legal effect. Examples abound of the allowance of claims based upon statutory trusts, including trusts created by the Perishable Agricultural Commodities Act of 1930 ("PACA"), 7 U.S.C. § 499e(c) (1980), *see Magic Restaurants, Inc. v. Bowie Produce Co., Inc. (In re Magic Restaurants, Inc.),* 205 F.3d 108 (3d Cir.2000); and the Pack-

---

**3.** Regarding the differences between express trusts and those implied in law, *see Spinoso v.* *Heilman (In re Heilman),* 241 B.R. 137, 161–62 (Bankr.D.Md.1999).

ers and Stockyards Act, 7 U.S.C. § 196 et seq. (1976), *see Stowers v. Mahon (In Matter of Samuels & Co., Inc.)*, 483 F.2d 557 (5th Cir.1973). *See also 5 Collier on Bankruptcy* ¶ 541.4 (15th ed. rev.2000). State statutory construction trusts for the protection of subcontractors and suppliers have also been held to create claims allowable in bankruptcy. *See, for example, Briggs Electrical Contracting Services, Inc. v. Elder–Beerman Stores Corp. (In re Elder–Beerman Stores Corp.)*, 221 B.R. 404 (Bankr.S.D.Ohio 1998) and *Selby v. Ford Motor Co.*, 590 F.2d 642, 647 (6th Cir.1979) ("Federal bankruptcy law should recognize and enforce the property rights created by state law under the Michigan statutory trust."). *See also Huizinga v. United States*, 68 F.3d 139 (6th Cir.1995) (Allowance of claim based upon statutory trust created by Michigan Builders Trust Fund Act came ahead of claims of government for unpaid Federal withholding tax.).

■ The requirement that an express trust must exist for purposes of finding a debt incurred by a debtor while acting in fiduciary capacity to be nondischargeable under 11 U.S.C. § 523(a)(4) has no application in the present context of this case. The issue here is whether the statute gave rise to a claim cognizable in bankruptcy. This Court holds that it does.

While Mr. McGee was proven by the claimants to be the corporate officer with ultimate authority and in actual control of the corporation, Mrs. McGee was not. Accordingly, only the claims against Mr. McGee may be allowed if the claimants can show that Mr. McGee "knowingly retain[ed] or use[d] the moneys held in trust under [the statute], or any part thereof, for any purpose other than to pay those subcontractors for whom the moneys are held in trust[.]" Md.Code Ann., [Real Prop.], § 9–202 (1996).

## CLAIMS AND OBJECTIONS

■ The Bankruptcy Code defines the term "claim" as follows:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]

11 U.S.C. § 101(5). *See also In re Wang Zi Cashmere Products, Inc.*, 202 B.R. 228, 232 (Bankr.D.Md.1996) (The term "claim" is defined in the Bankruptcy Code to include any right to payment and need not be fixed and may be contingent or unliquidated.) The Fourth Circuit Court of Appeals held in the case of *Stewart Foods, Inc. v. Broecker (In re Stewart Foods, Inc.)*, 64 F.3d 141 (1995):

Congress intended to adopt the broadest possible definition of the term "claim," so that a bankruptcy case would deal with all of the debtor's legal obligations. The House and Senate Reports to the Bankruptcy Reform Act of 1978 state the following about the definition of "claim":

By this broadest possible definition, and by the use of the term throughout the title 11, especially in subchapter I of chapter 5, the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 309 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6266; S.Rep. No. 95–989, 95th Cong., 2d Sess. 22 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5808; *see also Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S.Ct. 2150, 2153–54, 115 L.Ed.2d 66 (1991) ("Con-

gress intended by [the language of 11 U.S.C. § 101(5)] to adopt the broadest available definition of 'claim.' "); *Grady v. A.H. Robins Co.,* 839 F.2d 198, 200 (4th Cir.1988).

64 F.3d at 144. The Bankruptcy Code defines a "creditor" partly as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." § 101(10)(A). *See also Atlas Machine & Iron Works, Inc. v. Bethlehem Steel Corp.,* 986 F.2d 709, 714 (4th Cir.1993). The claims in this case arose prepetition, when the acts giving rise to the claim occurred. *Butler v. NationsBank, N.A.,* 58 F.3d 1022 (4th Cir.1995), rather than the date when the judgments against the corporations were entered postpetition.

Section 502(a) and (b)(1) of the Bankruptcy Code, which applies in the instant case with respect to the pending claims and objections, provides as follows:

Section 502. Allowance of claims or interests.

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]

*Id. See also* Federal Rule of Bankruptcy Procedure 3007 regarding the form and notice of filing of objections to claims.

The proper standard for determining an objection to claims was settled more than 20 years ago in this district by District Judge James R. Miller in the leading case of *Superior Metal Moulding Co., Inc. v. Shipp (In re Friedman, Receiver),* 436 F.Supp. 234 (D.Md.1977), in which the court stated:

In bankruptcy, it is settled that a properly executed proof of claim is sufficient to shift the burden of producing evidence and to entitle the claimant to a share in the distribution of the bankrupt's estate unless an objector comes forward with evidence contradicting the claim. *See* Bankruptcy Act § 57(d), 11 U.S.C. § 93(d); Bankruptcy Rule 306(b)–(c): *Whitney v. Dresser,* 200 U.S. 532, 26 S.Ct. 316, 50 L.Ed. 584 (1906); 3 Collier on Bankruptcy § 57.14.

While a properly executed claim does shift the burden of producing evidence to the objector, the burden of persuasion remains at all times with the claimant. *See, e.g., Whitney v. Dresser,* 200 U.S. at 535, 26 S.Ct. 316; *In re Pringle Engineering & Mfg.,* 164 F.2d 299 (6th [7th] Cir.1947); *In re Sabre Shipping Corp.,* 299 F.Supp. 97 (S.D.N.Y.1969). At no time does the objector assume the burden of disproving the claim. See 3 Collier S57.18(5).

. . . [T]he objector must present "some evidence" contradicting the proof of claim, whereupon the bankruptcy judge must weigh the evidence presented by the objector against the proof of claim, which itself retains some weight as evidence, *e.g., Whitney v. Dresser, supra,* and any evidence presented by the claimant. After weighing the evidence, the judge must make a finding of fact as to the validity and amount of the claim. *See In re Hannevig,* 10 F.2d 941, 942 (2d Cir.1925) ("evidence contradicting (the proof of claim)"); *In re Sabre Shipping Corp.,* 299 F.Supp. 97, 99 (S.D.N.Y.1969) ("contradictory evidence"); *In re Bradley,* 16 F.2d 301, 302 (S.D.N.Y.1926) ("some evidence contra-

dicting it"); 3 Collier § 57.13, at 225 ("some evidence to the contrary").

436 F.Supp. at 237.

## ANALYSIS OF THE CLAIMS AND OBJECTIONS

 In order to prove a violation of the Maryland Construction Trust Statute, and thereby to obtain personal liability against the debtors, claimants must show (1) the existence of funds held in trust on behalf of the claimants by the debtors as trustees, (2) paid under a contract by an owner to a contractor, or by the owner or contractor to a subcontractor (3) for work done or materials furnished, or both, for or about a building by the subcontractor-claimants. Md.Code Ann., [Real Prop.] § 9–201, (4). The commingling of trust funds by the contractor is not a bar to recovery by claimants. The lack of a requirement that trust funds must be segregated in a separate account indicates that the while the commingling of trust funds is not a violation of the statute, it is likewise not a bar to recovery. This means that specific trust funds need not be traced by the claimants in order to enforce the trust and to recover for its violation. Claimants must further show that (5) a person in control of the corporation, whether an "officer, director, or managing agent of any contractor or subcontractor" (6) "knowingly retain[ed] or use[d]" the moneys held in trust "or any part thereof" (7) "For any purpose other than to pay those subcontractors for whom the moneys are held in trust." Md.Code Ann., [Real Prop.] § 9–202.

The claimants have amply demonstrated the existence of prepetition claims against the corporate entities, that funds earmarked for the payment of those claims were diverted to loans to the debtors and other payments for their benefit and that Mr. McGee failed to pay subcontractors and suppliers for whom the moneys were held in trust. The fact that contracts existed between the parties pursuant to which monies were due to the claimants by the corporation is acknowledged. The documentary evidence presented by the claimants consisted of several large looseleaf binders that contained copies of numerous invoices for labor and materials furnished to Keystone, deed of trust notes and other loan documents executed by Keystone and its lenders and the corporate ledger showing Mr. McGee's diversion of funds. Monies were paid periodically by the lenders to Keystone pursuant to the formalities of construction loans based upon draws submitted to the lenders by Keystone as specific work was performed by the claimants and others. Keystone's entitlement to these periodic disbursements was dependent upon the work performed by the subcontractors and was subject to their claims for payment. When the funds came into Keystone's possession and control for the payment of the claims of subcontractors and suppliers, the funds became subject to the trust created by the statute on the claimants' behalf. As indicated earlier, the fact that Keystone and its Subchapter S corporate subsidiaries shared an identity of interest as owner/contractors is of no moment to the application of the statute and its requirement that funds be held in trust for payments to subcontractors.

The debtors' counter argument is that all of the funds received by Keystone, Inc. were fully paid to the claimants, albeit applied to the earliest invoices, that only the most recent invoices remained unpaid, and that the failure to pay the claimants in full was beyond the ability of the corporation because its funds ran out, and not that they were diverted or retained by the individual debtors.

This contention was rebutted by the claimants, who demonstrated conclusively that although the unpaid invoices contained in claimants' Exhibits 3 and 4 were the latest invoices representing the last services rendered by the claimants on various projects, there were substantial funds retained by Mr. McGee that should have been used to pay these claimants. Despite

the fact that specific funds need not be traced in order to prove the existence of a trust and to recover under the statute, the claimants successfully traced the receipt and disbursement of the trust funds by Mr. McGee through ledger entries. The Court finds that these were funds that the Construction Trust Statute required be held in trust for the claimants and other similarly situated subcontractors. The question of whether old or new invoices were paid from the trust funds is not the issue. The real issue is whether there were invoices from the projects covered by the statute, whether old or new, that went unpaid when there were funds available to pay them. By providing unpaid invoices for labor and materials furnished for designated projects, the claimants have conclusively proven the existence of claims against the debtors' corporation that should have been paid from monies held in trust for that purpose under the statute. The evidence demonstrated that trust fund monies went to other purposes and not to pay the claimants. *Cf. Sellars v. United States,* 938 F.Supp. 432, 434 (E.D.Mich. 1996). Therefore, Mr. McGee is personally liable for these claims under the Maryland Construction Trust Statute.

Benfield and Ridge have satisfied their burden of showing that they have valid, enforceable claims against Mr. McGee, and therefore the debtors' objections will be overruled as to him. However, because there has not been sufficient proof presented on the issue of Mrs. McGee's control over the operations of Keystone and the other corporate entities, the claims of Benfield and Ridge are not enforceable against her, and the debtors' objections will be sustained regarding her liability.

WHEREFORE, the objection to the claims of Benfield and Ridge will be OVERRULED as to Robert W. McGee and SUSTAINED as to Janis S. McGee. The claim of Benfield Electric Co. will be allowed as to Robert W. McGee as a general unsecured claim in the amount of $77,222. The claim of Ridge Heating, Air Conditioning & Plumbing, Inc., will be allowed as a general, unsecured claim against Robert W. McGee in the amount of $293,622.

ORDER ACCORDINGLY.