**In re Donald J. TRESHMAN, Jr. and Eugenia W. Treshman, Debtors.**

**Planned Parenthood of the Columbia/Willamette, Inc., et al., Plaintiffs,**

**v.**

**Donald J. Treshman, Jr. and Eugenia W. Treshman, Defendants.**

**Bankruptcy No. 99–6–4239–JS.**
**Adversary No. 00–5244–JS.**

United States Bankruptcy Court, D. Maryland.

Jan. 25, 2001.

Maria T. Vullo, Amy C. Brown, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Kevin Arthur, Kramon & Graham, P.A., Baltimore, Counsel to the Plaintiffs.

Kevin Kulesa, Bartolini, Capriolo & Kulesa, P.A., Eldersburg, Counsel to the Debtor–Defendants.

Sarah E. Longson, Baltimore, Chapter 7 Trustee.

### *MEMORANDUM OPINION GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO THE SECOND CAUSE OF ACTION, NAMELY NONDISCHARGEABILITY OF DEBT, AND DECLARING JUDGMENTS ENTERED BY THE U.S. DISTRICT COURT FOR THE DISTRICT OF OREGON AGAINST THE DEBTOR, DONALD J. TRESHMAN, JR., TO BE NONDISCHARGEABLE PURSUANT TO 11 U.S.C. § 523(a)(6).*

JAMES F. SCHNEIDER, Bankruptcy Judge.

The plaintiffs are individual physicians and their corporate employers engaged in performing legal abortions. The corporate plaintiffs are providers of women's health services. The debtor, a regional leader of the American Coalition of Life Activists ("ACLA"), a radical organization opposed to abortion, targeted the individual plaintiffs for possible injury and death by posting their names and addresses on the Internet and by distributing wanted posters bearing their likenesses. The plaintiffs sued the debtor and other members of the ACLA in the Federal district court in Oregon and obtained substantial judgments against them for damages based upon the infliction of willful injury. The debtor filed bankruptcy in this Court, and the plaintiffs filed the instant complaint to determine the Oregon judgments to be nondischargeable based upon the doctrine of collateral estoppel. Before the Court are the motions for summary judgment [P. 9] filed by the plaintiffs, Planned Parenthood of the Columbia/Willamette, Inc., Portland Feminist Women's Health Center, Robert Crist, M.D., Warren M. Hern. M.D., Elizabeth P. Newhall, M.D. and James Newhall, M.D., and by the debtor-defendant, Donald J. Treshman, as to the second cause of action stated in the instant complaint, namely the nondischargeability of debts. For the reasons set forth, the plaintiffs' motion will be granted and the defendant's motion will be denied.

### FINDINGS OF FACT

On November 2, 1999, the debtors, Donald J. Treshman, Jr., and Eugenia W. Treshman, filed the instant voluntary joint Chapter 7 bankruptcy petition in this Court. On Schedule E, they listed the following unsecured debts owed to the following claimants:

| | |
|---|---|
| Planned Parenthood of the Columbia/Willamette, Inc. | Court Judgment February, 1999 $2,405,834.86 |
| Portland Feminist Women's Health Center | Court Judgment February, 1999 $2,050,243.30 |
| Robert Crist, M.D. | Court Judgment February, 1999 $1,039,656.00 |
| Warren M. Hern, M.D. | Court Judgment February, 1999 $1,014,429.00 |
| Elizabeth P. Newhall, M.D. | Court Judgment February, 1999 $1,015,797.98 |
| James Newhall, M.D. | Court Judgment February, 1999 $1,000,375.00 |

On February 2, 1999, after a thirteen-day jury trial and four days of jury deliberations in the case of *Planned Parenthood of the Columbia/Willamette, Inc. v. American Coalition of Life Activists*, No. CIV. 95–1671–JO, 1999 WL 65450, conducted in the United States District Court for the District of Oregon,[1] a unanimous jury found that the debtor issued true threats against the plaintiffs in violation of the Freedom of Access to Clinic Entrances Act ("FACE"), 18 U.S.C. § 248 (2000).[2]

1. *See also* the following decisions issued in the same case:

*Planned Parenthood of Columbia/Willamette, Inc. v. American Coalition of Life Activists*, 41 F.Supp.2d 1130 (D.Or.1999); *Planned Parenthood of Columbia/Willamette, Inc. v. American Coalition of Life Activists*, 1999 WL 65450 (D.Or. Feb. 25, 1999); *Planned Parenthood of Columbia/Willamette, Inc. v. American Coalition of Life Activists*, 945 F.Supp. 1355 (D.Or. 1996); and *Planned Parenthood of the Columbia/Willamette, Inc. v. American Coalition of Life Activists*, 23 F.Supp.2d 1182 (D.Or.1998).

2. The Freedom of Access to Clinic Entrances Act provides:

(a) Prohibited activities.—Whoever—

(1) by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services;

(2) by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship; or

(3) intentionally damages or destroys the property of a facility, or attempts to do so, because such facility provides reproductive health services, or intentionally damages or destroys the property of a place of religious worship,

shall be subject to the penalties provided in subsection (b) and the civil remedies provided in subsection (c), except that a parent or legal guardian of a minor shall not be subject to any penalties or civil remedies under this section for such activities insofar as they are directed exclusively at that minor.

(b) Penalties.—Whoever violates this section shall—

(1) in the case of a first offense, be fined in accordance with this title, or imprisoned not more than one year, or both; and

(2) in the case of a second or subsequent offense after a prior conviction under this section, be fined in accordance with this title, or imprisoned not more than 3 years, or both;

except that for an offense involving exclusively a nonviolent physical obstruction, the fine shall be not more than $10,000 and the length of imprisonment shall be not more than six months, or both, for the first offense; and the fine shall, notwithstanding section 3571, be not more than $25,000 and the length of imprisonment shall be not more than 18 months, or both, for a subsequent offense; and except that if bodily injury results, the length of imprisonment shall be not more than 10 years, and if death results, it shall be for any term of years or for life.

(c) Civil remedies.—

(1) Right of action.—

(A) In general.—Any person aggrieved by reason of the conduct prohibited by subsection (a) may commence a civil action for the relief set forth in subparagraph (B), except that such an action may be brought under subsection (a)(1) only by a person involved in providing or seeking to provide, or obtaining or seeking to obtain, services in a facility that provides reproductive health services, and such an action may be brought under subsection (a)(2) only by a person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship or by the entity that owns or operates such place of religious worship.

(B) Relief.—In any action under subparagraph (A), the court may award appropriate relief, including temporary, preliminary or permanent injunctive relief and compensatory and punitive damages, as well as the costs of suit and reasonable fees for attorneys and expert witnesses. With respect to compensatory damages, the plaintiff may elect, at any time prior to the rendering of final judgment, to recover, in lieu of actual damages, an award of statutory damages in the amount of $5,000 per violation.

(2) Action by Attorney General of the United States.—

(A) In general.—If the Attorney General of the United States has reasonable cause to believe that any person or group of persons is being, has been, or may be injured by conduct constituting a violation of this section, the Attorney General may commence a

On February 22, 1999, the court entered judgment on the jury's verdict, which found, *inter alia,* that the debtor was liable to the plaintiffs for punitive and compensatory damages totaling $8,526,336.14, plus accrued interest and costs.

After confirming the decision of the jury by the entry of money judgments against the defendants, including those against

civil action in any appropriate United States District Court.

(B) Relief.—In any action under subparagraph (A), the court may award appropriate relief, including temporary, preliminary or permanent injunctive relief, and compensatory damages to persons aggrieved as described in paragraph (1)(B). The court, to vindicate the public interest, may also assess a civil penalty against each respondent—

(i) in an amount not exceeding $10,000 for a nonviolent physical obstruction and $15,000 for other first violations; and

(ii) in an amount not exceeding $15,000 for a nonviolent physical obstruction and $25,000 for any other subsequent violation.

(3) Actions by State Attorneys General.—

(A) In general.—If the Attorney General of a State has reasonable cause to believe that any person or group of persons is being, has been, or may be injured by conduct constituting a violation of this section, such Attorney General may commence a civil action in the name of such State, as *parens patriae* on behalf of natural persons residing in such State, in any appropriate United States District Court.

(B) Relief.—In any action under subparagraph (A), the court may award appropriate relief, including temporary, preliminary or permanent injunctive relief, compensatory damages, and civil penalties as described in paragraph (2)(B).

(d) Rules of construction.—Nothing in this section shall be construed—

(1) to prohibit any expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment to the Constitution;

(2) to create new remedies for interference with activities protected by the free speech or free exercise clauses of the First Amendment to the Constitution, occurring outside a facility, regardless of the point of view expressed, or to limit any existing legal remedies for such interference;

(3) to provide exclusive criminal penalties or civil remedies with respect to the conduct prohibited by this section, or to

Mr. Treshman, the District Court [Jones, D.J.] issued a permanent injunction against all the defendants, including Mr. Treshman, from continuing to commit illegal and injurious acts against the plaintiffs, on February 25, 1999.[3] On March 16, 1999, the court issued an amended order and permanent injunction that contained additional findings of facts and conclusions of law.[4] In connection with the decision,

preempt State or local laws that may provide such penalties or remedies; or

(4) to interfere with the enforcement of State or local laws regulating the performance of abortions or other reproductive health services.

(e) Definitions.—As used in this section:

(1) Facility.—The term "facility" includes a hospital, clinic, physician's office, or other facility that provides reproductive health services, and includes the building or structure in which the facility is located.

(2) Interfere with.—The term "interfere with" means to restrict a person's freedom of movement.

(3) Intimidate.—The term "intimidate" means to place a person in reasonable apprehension of bodily harm to him- or herself or to another.

(4) Physical obstruction.—The term "physical obstruction" means rendering impassable ingress to or egress from a facility that provides reproductive health services or to or from a place of religious worship, or rendering passage to or from such a facility or place of religious worship unreasonably difficult or hazardous.

(5) Reproductive health services.—The term "reproductive health services" means reproductive health services provided in a hospital, clinic, physician's office, or other facility, and includes medical, surgical, counselling or referral services relating to the human reproductive system, including services relating to pregnancy or the termination of a pregnancy.

(6) State.—The term "State" includes a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States.

18 U.S.C. § 248 (2000).

3. 1999 WL 65450 (D.Or.1999).

4. The Oregon District Court issued the following permanent injunction against the defendants, including Mr. Treshman:

Plaintiffs, Dr. Robert Crist, Dr. Warren Hern, Dr. Elizabeth Newhall, Dr. James

Newhall, Planned Parenthood of the Columbia/Willamette, Inc. and Portland Feminist Women's Health Center, doing business as All Women's Health Services (collectively "plaintiffs"), commenced this action seeking a permanent injunction, damages and other relief. The trial before the jury having been concluded, and the jury having found that defendants did issue true threats against plaintiffs, and this Court having found that plaintiffs are without an adequate remedy at law, the Court makes the following findings:

\* \* \* \* \* \*

1. The "Deadly Dozen" Poster (Trial Exhibit 1) is a true threat to bodily harm, assault or kill one or more of the plaintiffs.

\* \* \* \* \* \*

11. The Poster of Dr. Robert Crist (Trial Exhibit 5) is a true threat to bodily harm, assault or kill one or more of the plaintiffs.

\* \* \* \* \* \*

16. The "Nuremberg Files" (Trial Exhibits 7, 9) are a true threat to bodily harm, assault or kill one or more of the plaintiffs.

\* \* \* \* \* \*

454. As a result of the defendants' issuance of these threats, plaintiffs have undertaken a variety of security measures in order to ensure their safety.

\* \* \* \* \* \*

455. Based upon the evidence admitted at trial, the Court finds that plaintiffs remain threatened by the defendants' threats, and thus have no adequate remedy at law.

\* \* \* \* \* \*

456. From my independent review of the evidence produced at trial, from which I have made the above findings of fact, I conclude that plaintiffs have proven with clear and convincing evidence that each defendant, acting independently and as a co-conspirator, prepared, published and disseminated the Deadly Dozen poster, the Poster of Dr. Robert Crist and the Nuremberg Files.

457. I find that each defendant acted with specific intent and malice in a blatant and illegal communication of true threats to kill, assault or do bodily harm to each of the plaintiffs and with the specific intent to interfere with or intimidate the plaintiffs from engaging in legal medical practices and procedures. The term "threaten" as used hereafter incorporates this definition.

458. I totally reject the defendants' attempts to justify their actions as an expression of opinion or as a legitimate and lawful exercise of free speech in order to dissuade the plaintiffs from providing abortion services.

459. The Freedom of Access to Clinic Entrances Act ("FACE"), 18 U.S.C. S 248, provides that in an action brought by a "person aggrieved" by threats of force, "the court may award appropriate relief, including temporary, preliminary, permanent injunctive relief and compensatory and punitive damages, as well as costs of suit and reasonable fees for attorneys...." 18 U.S.C. S 248(c)(1)(B). In its verdict, the jury found each defendant liable under FACE and awarded each plaintiff compensatory and punitive damages against each defendant.

460. FACE provides this Court with express statutory authority for injunctive relief, and the substantial evidence of continuing harm to plaintiffs from defendants' unlawful threats provides clear factual and equitable bases for issuance of an injunction. In light of that authority, the general equitable authority of the Court, and the Court's findings concerning the grave threat to each plaintiff's security and the likelihood of continuing harm from each defendant, on February 25, 1999, I issued a permanent injunction enjoining defendants from continuing their unlawful threats that place plaintiffs' lives in peril, and binding the defendants' agents, and those persons in active concert or participation with them. I now enter this amended order and permanent injunction, *nunc pro tunc* February 25, 1999. *See* Fed.R.Civ.P. 65(d).

461. Plaintiffs are entitled to permanent injunctive relief because they lack an adequate remedy at law. *See Continental Airlines, Inc. v. Intra Brokers, Inc.*, 24 F.3d 1099, 1104 (9th Cir.1994). Each day, plaintiffs' lives and security are endangered because of defendants' unlawful threats against them. Monetary relief alone cannot address that harm. This Court has, therefore, the obligation to fashion equitable relief to protect the plaintiffs rights.

\* \* \* \* \* \*

465. The law requires a higher level of scrutiny and proof for an injunction involving speech than for an award of damages for violation of a statute. *See Madsen v. Women's Health Center*, 512 U.S. 753, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994). I find the actions of the defendants in preparing, publishing and disseminating these true threats objectively and subjectively [FN1] were not protected speech under the First Amendment. Therefore, the Court issues the following permanent injunction against each defendant, their agents and those in active concert or participation with them, and specifically against Paul DeParrie, an employee and agent of defendant Advocates for Life Ministries, who conspired with Neal Horsley of Carrollton, Georgia, to provide the specific information for the Nuremberg Files and who thereafter ob-

structed justice by destroying or assisting in concealing the materials he provided to Horsley to convert into true threats on his web site.

FN1. For purposes of this Order and Preliminary Injunction, I consider a person to make a "true threat" when the person makes a statement that, in context, a reasonable listener would interpret as communicating a serious expression of an intent to *inflict or cause serious harm on or to the* listener (objective); and the speaker intended that the statement be taken as a threat that would serve to place the listener in fear for his or her personal safety, regardless of whether the speaker actually intended to carry out the threat (subjective).

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

PERMANENT INJUNCTION

1. Under the equitable powers of this Court and the Court's authority granted under the Freedom of Access to Clinics Entrances Act ("FACE"), 18 U.S.C. S 248, defendants AMERICAN COALITION OF LIFE ACTIVISTS, ADVOCATES FOR LIFE MINISTRIES, MICHAEL BRAY, ANDREW BURNETT, DAVID CRANE, MICHAEL DODDS, TIMOTHY PAUL DRESTE, JOSEPH L. FOREMAN, CHARLES ROY MCMILLAN, BRUCE EVAN MURCH, CATHERINE RAMEY, DAWN MARIE STOVER, DONALD TRESHMAN and CHARLES WYSONG (collectively "defendants"), and their agents and all persons in active concert or participation with any of them who receive actual notice of this Order and Permanent Injunction or the "Notice" attached as Exhibit A to this Order, are hereby immediately and permanently ENJOINED and RESTRAINED from committing any of the following acts or aiding, abetting, directing or facilitating others to commit or conspiring with any others to commit the following acts:

(a) Threatening, with the specific intent to do so, Dr. Robert Crist, Dr. Warren Hern, Dr. Elizabeth Newhall, Dr. James Newhall, Planned Parenthood of the Columbia/Willamette, Inc., Portland Feminist Women's Health Center, doing business as All Women's Health Services, or any of them, or any of their family members, officers, agents, servants, employees, patients, or attorneys, in violation of the Freedom of Access to Clinics Entrances Act ("FACE"), 18 U.S.C. S 248;

(b) Publishing, republishing, reproducing and/or distributing anywhere, either directly or indirectly, the "Deadly Dozen" Poster, which is Trial Exhibit 1, or its equivalent, with specific intent to threaten Dr. Robert Crist, Dr. Warren Hern, Dr. Elizabeth New-

hall, Dr. James Newhall, Planned Parenthood of the Columbia/Willamette, Inc., Portland Feminist Women's Health Center, doing business as All Women's Health Services, or any of them, or any of their family members, officers, agents, servants, employees, patients, or attorneys;

(c) Publishing, republishing, reproducing and/or distributing anywhere, either directly or indirectly, the Poster of Dr. Robert Crist, which is Trial Exhibit 5, or its equivalent, with specific intent to threaten Dr. Robert Crist, Dr. Warren Hern, Dr. Elizabeth Newhall, Dr. James Newhall, Planned Parenthood of the Columbia/Willamette, Inc., Portland Feminist Women's Health Center, doing business as All Women's Health Services, or any of them, or any of their family members, officers, agents, servants, employees, patients or attorneys;

(d) Providing additional material concerning Dr. Robert Crist, Dr. Warren Hern, Dr. Elizabeth Newhall, Dr. James Newhall, Planned Parenthood of the Columbia/Willamette, Inc., Portland Feminist Women's Health Center, doing business as All Women's Health Services, or any of them, or any of their family members, officers, agents, servants, employees, patients, or attorneys, with a specific intent to threaten, to the Nuremberg Files or any mirror web site [FN2] that may be created. In addition, defendants are enjoined from publishing, republishing, reproducing and/or distributing in print or electronic form the personally identifying information about plaintiffs contained in Trial Exhibits 7 and 9 (the Nuremberg Files) with a specific intent to threaten.

FN2. A "mirror web site" within the meaning of this Order means a web site created by an independent party who takes the content from a web site and reproduces it on his or her own computer ("the web server") and locates it at a different Internet address.

2. Defendants and their agents and all individuals in active concert or participation with any of them who receive actual notice of this Order and Permanent Injunction or the attached "Notice" shall promptly submit to the custody of the Court all materials in their possession, custody or control that are not in compliance with the provisions of this Permanent Injunction, except that counsel for the defendants may retain one copy of any such materials that were included in the Record of this Court.

3. Willful violation of this Order and Permanent Injunction or any other of this Court's orders may subject any person who commits such an act to criminal and/or civil prosecution for contempt of this Court. Any violation of this Order and Permanent

the court made the following enumerated findings of fact (Nos.381–401) regarding the activities of Mr. Treshman:

381. Defendant Treshman is a regional director of ACLA. (ACLA Answer P 31a; Tr. 1253, 1496)

382. In May 1993, when defendant Treshman learned that Dr. Robert Crist planned to practice medicine regularly at a Planned Parenthood clinic in Kansas City, Missouri, Treshman stated "we have been assured that he [Dr. Crist] will be monitored and that appropriate action will be taken." (ACLA Answer P 59; Tr. 1260)

383. Defendant Treshman organized and sponsored an event in Oklahoma City in June 1993 at which Michael Bray and Andrew Burnett spoke in favor of the use of force. (Ex. 320; Tr. 894)

384. Defendant Treshman knew that before Dr. Gunn's murder in 1993, a wanted poster of Dr. Gunn had been circulated in Pensacola, Florida where Dr. Gunn lived and worked. (Tr. 1497)

385. On the morning of Dr. Gunn's murder, defendant Treshman issued a press release endorsing the murder and calling for donations for Michael Griffin's defense. (Ex. 40)

386. Defendant Treshman attended the meeting in Chicago in April 1994 out of which ACLA was formed. (Tr. 1472)

387. Defendant Treshman assisted in the formation of ACLA. (Tr. 834)

388. Defendant Treshman provided the name of Dr. Douglas Karpen for the Deadly Dozen poster. (Tr. 1493)

389. Defendant Treshman attended the ACLA event in Washington, D.C. in January 1995 at which the Deadly Dozen poster was released. (ACLA Answer P 40b; Tr. 1254, 1493)

390. Treshman's Newsline announced in January 1995 that immediately after release of the Deadly Dozen poster, the physicians on the poster were offered U.S. Marshal protection. (Ex. 71)

391. Defendant Treshman was a featured speaker at ACLA events. (Tr. 1300)

392. Defendant Treshman had multiple telephone discussions with other defendants during the time surrounding ACLA's August 1995 event, at which the Dr. Crist poster was unveiled. (Ex. 94)

393. Defendant Treshman received a letter from David Crane regarding the St. Louis event in August 1995 and the Poster of Dr. Robert Crist. (Ex. 76)

394. Defendant Treshman attended the ACLA planning meeting in November 1995. (Tr. 2645)

395. Defendant Treshman had multiple telephone discussions with other defendants during the time surrounding ACLA's January 1996 event, at which the Nuremberg Files were unveiled. (Ex. 94)

396. Defendant Treshman advocates and promotes the use of force. In reference to the sniper shooting of abortion

---

Injunction will result in immediate issuance of an order to show cause for service on the violator, who after appropriate hearings and findings, will be dealt with within the sanctions provided by law.

4. Defendants, and their agents and all persons in active concert or participation with any of them, are hereby ENJOINED and RESTRAINED from disposing of, secreting, pledging, encumbering, conveying, transferring, damaging, mortgaging, or otherwise disposing or removing from its customary location or in any other way making unavailable to the processes of the court, any of their real property or personal property, including, but not limited to, cash, bank accounts, retirement plans, bonds, and other securities, liquid assets and personal property regardless of whether the property is held jointly with another person or individually by the defendant.

5. This Court shall retain jurisdiction of this action for all purposes, including without limitation, all proceedings involving the interpretation, enforcement or amendment of this Order and Permanent Injunction. *Planned Parenthood of the Columbia/Willamette, Inc. v. American Coalition of Life Activists,* 41 F.Supp.2d 1130, 1131–1156 (D.Or. 1999).

provider Dr. Garson Romalis in Canada in November 1994, Treshman stated "I would say that was certainly the superb tactic. It was certainly far better than anything that was seen in the States. Because the shooting was done in such a way that the perpetrator got away. I would think more abortionists would quit as a result of it." (Ex. 113)

397. Defendant Treshman uses intimidation as a means of interfering with the provision of reproductive health services.

398. Defendant Treshman has never disassociated himself with, nor expressed disapproval of, any of ACLA's activities.

399. Defendant Donald Treshman violated or conspired to violate FACE. (Verdict at 15)

400. Defendant Treshman injured each plaintiff in the amount of compensatory damages awarded by the jury. (Verdict at 15)

401. Defendant Treshman acted with malice, in reckless disregard of plaintiffs' rights and with specific intent in threatening plaintiffs.

41 F.Supp.2d 1130, 1150–51 (D.Or.1999). The debtor objected to both injunctions and the objections were overruled.

On February 25, 2000, the plaintiffs in the preceding lawsuit filed the instant adversary proceeding to have this Court determine that the judgments entered against the defendant-debtor, Donald J. Treshman, Jr., in the District of Oregon are nondischargeable, pursuant to Section 523(a)(6) of the Bankruptcy Code.[5] On June 5, 2000, the plaintiffs filed the instant motion for summary judgment on grounds of collateral estoppel, that is, the preclusive effect of the judgment of the U.S. District Court for the District of Oregon

that the defendant's conduct caused willful and malicious injury to the plaintiffs.

*CONCLUSIONS OF LAW*

█ Summary judgment is appropriate when the "proceedings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" demonstrate the absence of a genuine issue of material fact. Fed.R.Civ.P. 56(c), made applicable by Fed. R. Bankr.P. 7056. The court may grant summary judgment against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *quoted in Preston v. Mountainside Transport, Inc.,* 795 F.Supp. 159, 160 (D.Md.1992). In addition, this Court is bound by factual determinations made in prior actions where collateral estoppel applies. *Ramsey v. Bernstein (In re Bernstein),* 197 B.R. 475, 478 (Bankr.D.Md. 1996), *aff'd* 113 F.3d 1231, 1997 WL 278983 (4th Cir.1997) (*citing Allen v. McCurry,* 449 U.S. 90, 94–95, 101 S.Ct. 411, 414–415, 66 L.Ed.2d 308 (1980)).

█ The plaintiffs' motion for summary judgment will be granted, for the following reasons. The collateral estoppel effect of the decision rendered by the United States District Court for the District of Oregon could not be clearer under the circumstances of this case. That court found specific intent on the part of the debtor, Mr. Treshman, to inflict willful and malicious injury on another entity or the property of another entity. By reason of the District Court's imposition of significant compensatory and punitive damages, its finding that such injury had been willfully inflicted is beyond dispute.

---

5. Section 523(a)(6) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

11 U.S.C. § 523(a)(6) (1993 & Supp.2000).

The Supreme Court held in the case of *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), that collateral estoppel may supply the basis for a finding of nondischargeability of debt based upon an earlier judicial decision, provided that the standard of proof imposed in the earlier proceeding was equal to or greater than that required in the determination of nondischargeability in bankruptcy. The standard of proof determined to be correct was proof by a mere preponderance of the evidence. *Id.* at 287, 111 S.Ct. 654 ("Requiring the creditor to establish by a preponderance of the evidence that his claim is not dischargeable reflects a fair balance between these conflicting interests.") *Cf. Combs v. Richardson*, 838 F.2d 112 (4th Cir.1988) ("[T]he policies of the Bankruptcy Code are best effectuated by requiring that creditors prove by a preponderance of the evidence the willfulness and maliciousness of the debtors' acts under § 523(a)(6)..."). In the instant case, the decision of the U.S. District Court in Oregon was based upon an even greater standard of proof, by clear and convincing evidence, which more than satisfied the standard applicable in the bankruptcy court.

In order for collateral estoppel to apply, a party must establish four elements: (1) the issue sought to be precluded must have been identical to the issue in the prior action; (2) the issue must have been actually decided; (3) the issue was determined by a valid and final judgment, and (4) the determination of the issue must have been essential to the prior judgment. *Combs*, 838 F.2d at 115, *citing Matter of Ross*, 602 F.2d 604, 607–608 (3rd Cir.1979).

The Oregon District Court decided the issue in the instant case when it specifically held that the debtor acted with "malice, in reckless disregard of plaintiffs' rights and with specific intent in threatening others." *Planned Parenthood*, 41 F.Supp.2d at 1151 (D.Or.1999). The judgment was final and appealable [6] and the court's finding, as evidenced by its rendering of a permanent injunction, was necessary and essential to the judgment.

■ The decision in *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), cited by the defendant does not support his position that the debt is dischargeable. In that case, the Supreme Court held that mere recklessness or negligence in performing an act which in itself was not injurious was insufficient to support a finding of nondischargeability under Section 523(a)(6). Rather, willful and malicious intent to cause that injury was required. In any event, the case of a surgeon whose error caused death or injury to a patient is not comparable to that of an abortion protester who targets a physician for injury or death. The conduct of the actor in the first case is dischargeable under Section 523(a)(6) due to its nature as an unintentional infliction of harm. In the instant case, the debt arising from the debtor's conduct is not dischargeable under Section 523(a)(6) because the injuries here were caused by the willful and malicious intent of the debtor.

This case is not analogous to *Kawaauhau*. Here, the debtor was not doing something to benefit the plaintiffs, something that went wrong, something that was unintended, but in fact began as a malicious and willful intention to do harm. The judge and jury in the Oregon District Court found that actions taken by the debtor in this case were not constitutionally protected speech and that his conduct and the conduct of others working in concert with him resulted in actual injury and expense to the plaintiffs. This was so clearly stated, that in addition to the imposition of substantial compensatory and punitive damages, the District Court permanently enjoined the defendant and others

---

6. As of the date of this opinion, an appeal by the defendant was pending in the 9th Circuit Court of Appeals.

**622**

from committing further harmful misconduct.

This Court need not retry a case that has already been tried in the District of Oregon. The imposition of an injunction in the earlier case did not by any means dilute the nondischargeable aspect of the plaintiffs' conduct. The court, acting within its proper jurisdiction to impose damages, also exercised its equitable powers to prohibit this debtor and others from continuing to commit unlawful and willful and malicious acts injurious to the plaintiffs. There is nothing before this Court to indicate that the imposition of an injunction had any impact on the ability of this Court to determine that the conduct of the debtor resulted in a nondischargeable debt.

The motion for summary judgment and memorandum submitted by the debtor made no reference to bankruptcy law and did not even address the nondischargeability of this debt. The pleadings apparently represent an attempt to retry the matter that has already been decided. The fact that an appeal is pending has no effect on the finality of the decision of the U.S. District Court in Oregon.

*Accord, Planned Parenthood of the Columbia/Willamette, Inc. v. Bray (In re Bray),* 256 B.R. 708 (Bankr.D.Md.2000) (Keir, J.).

Based on the arguments of counsel and the papers that have been presented, this Court finds that the debt to the plaintiffs in this case is nondischargeable pursuant to 11 U.S.C. § 523(a)(6) and accordingly the judgment rendered by the United States District Court for the District of Oregon will be determined to be nondischargeable without the necessity of entering a separate money judgment order because one already exists. The only order that this Court need enter is one that grants the summary judgment to the plaintiffs and determines the debt to be nondischargeable in the amount entered against the debtor by the Oregon District Court.

ORDER ACCORDINGLY.